## R. D. BAILEY, Appellant, v. IDAHO IRRIGATION COMPANY, LTD., a Corporation, Respondent.

[227 Pac. 1055.]

IRRIGATION WATER—WRONGFUL APPROPRIATION—ACTION · FOR DAMAGES —WATER-MASTER—CAREY ACT COMPANY—JOINT TORT-FEASORS—— —ENCOURAGING, AIDING, ABETTING — RATIFICATION — TEMPORARY BENEFIT INNOCENTLY DERIVED FROM WRONGFUL ACT.

1. An appropriator is entitled to have the full quantity of water called for by his appropriation flow in the natural stream, or in his ditch or canal, in such a way that he can enjoy its use, and for any material interference with this flow of water, by which his right to its use is substantially impaired, he may maintain an action for damages.

2. All persons who command, instigate, encourage, advise, countenance, co-operate in, aid or abet, an act by which the rights of another are wrongfully invaded, are liable to the same extent and in the same manner as if they had committed the act themselves.

3. If, with full knowledge of the facts, one ratifies an act by which the rights of another are wrongfully invaded, such ratification gives rise to a liability for the wrongful act, provided it benefited, or was committed in the interest of, the one so ratifying it.

4. One is not liable in damages because he has innocently derived a temporary or incidental benefit through the wrongful act of another, when he does not persist in availing · himself of a continuing benefit after learning the facts.

APPEAL from the Fourth Judicial District, for Blaine County. Hon. H. F. Ensign, Judge.

Action for damages for wrongful appropriation of water for irrigation. Judgment for defendant. *Affirmed.*

Bothwell & Chapman and C. O. Stockslager, for Appellants.

The wrongdoing of the respondent and the deputy commissioner of reclamation and water-master was concurrent; it was done for the benefit of respondent, and respondent took and retained such benefit. It cannot escape liability therefor. (3 Kinney on Irrigation, secs. 1660, 1661, 1685; *Kansas City v. Slangstrom,* 53 Kan. 431, 36 Pac. 706; *Koch v. Story,* 47 Colo. 335, 107 Pac. 1093; *Arnold v. C. Hoffman & Son Mill Co.,* 86 Kan. 12, 119 Pac. 373; *Van Buskirk v. Red Buttes Loan & Livestock Co.,* 24 Wyo. 183, 156 Pac. 1122, 160 Pac. 387; *Rogers v. Nev. Canal Co.,* 60 Colo. 59, Ann. Cas. 1917C, 669, 151 Pac. 923.)

E. A. Walters, R. P. Parry and Richards & Haga, for Respondent.

Actions for damages for wrongful conversion of water by refusing to permit the same to run into users' ditches and canals and locking their headgates sound in tort, must rest upon the invasion of some vested right or the violation of some legal duty, and the general law relating to damage suits is applicable thereto. (3 Kinney on Irrigation and Water Rights, p. 3053; 26 R. C. L. 757.)

Where one person commits a tortious wrong, the mere fact that the same accrues to the benefit of a second person is insufficient to charge such second person as a tort-feasor; the real test is a disregard of a legal duty, and where more than one party is sought to be charged as tort-feasors, such persons must have participated in the wrongful act either by their concurrent wrongful doing or by co-operating, aiding, abetting, encouraging, promoting or otherwise par-

ticipating' therein.    (26 R. C. L., sec. 15; 3 Kinney on Irrigation and Water Rights, sec. 1685.)

In determining liability for a tortious injury, the law regards the proximate and not the remote cause, and where the locking of water users' headgates was the proximate cause of their being deprived of water, and such act was committed by a person other than the defendant in an action for damages for such tortious wrong, the defendant in such action cannot be held liable therefor.    (38 Cyc. 442; 26 R. C. L. 106.)

When water-masters are selected for water districts in accordance with the law of this state and are paid by the water users as by law provided, such payment does not constitute such water-master the agent of any user of water on such stream.    (C. S., secs. 5608–5614.)

McCARTHY, C. J.—This is an action by appellant against respondent for an alleged unlawful appropriation by respondent of water to the use of which appellant claims he was entitled for the year 1919.    Appellant alleged in the complaint that he was the owner of 520 acres of land on Big Wood River with a priority of May 1, 1887, to the use of the waters of that river for irrigation; that he was entitled to the use of the water of numerous springs arising in the bed of respondent's reservoir, tributary to Big Wood River, and furnishing sufficient water to irrigate his land during the low-water season; that in 1919 respondent appropriated said water to its own use and deprived appellant of the use of it whereby he sustained damage through loss of his crops.    Respondent in its answer denied that it had appropriated water to which appellant was entitled, or interfered with his rights in any way.    This appeal is from a judgment of nonsuit.    The principal assignment of error is that the court erred in granting the motion for nonsuit and entering judgment for respondent.

The evidence shows that since the early '80's the water of Big Wood River has been used for irrigation.    Appellant's predecessors in interest commenced to use the water of that stream upon the land owned by him in 1887.    In 1909 the

dam and reservoir of respondent, a Carey Act company, were built. Respondent has certain storage rights, and has also succeeded to certain of the old rights which had been consummated prior to the construction of its reservoir. During 1919 the waters of the stream were distributed to the various users by one Chapman, a water-master duly selected and acting under the provisions of sec. 5609. He did not know of the existence of certain springs in the bed of the reservoir until some time late in August of 1919, and therefore distributed the water without specific reference to them. That season was an exceptionally low-water season, and early in the year it was necessary to make cuts in the delivery of water to the later appropriators in order to protect the rights of the early appropriators. The rights of those claiming under appropriation from the direct flow of the stream had been adjudicated by a decree known as the Frost decree in 1909, to which appellant's predecessors were parties. Respondent was not a party to this decree, its project having been completed later, but it had purchased some of the old decreed rights. On June 19, 1919, the water-master closed appellant's headgate, and after that appellant received no water for irrigation except an amount so small as to be negligible, which was furnished him for a few days during July. Appellant contends that the water resulting from the rise of the springs in the bed of respondent's reservoir amounted to about 20 second-feet; that on June 19, 1919, when the water-master closed his headgate, this water was running past it; that it did not and could not reach lower appropriators whose rights were prior to appellant's; that it was used by respondent or its stockholders. He therefore contends that the act of the water-master, in closing his headgate and not allowing him to use this water, was wrongful, that the water-master and respondent acted concurrently and jointly in the matter, and were therefore joint tort-feasors. It is an elementary rule that an injured party may sue one or all of several joint tort-feasors, and appellant has elected to sue respondent. It is stated in appellant's brief, though it is not alleged in the complaint,

that the erection and maintenance of respondent's dam and reservoir contributed to the result complained of. Entirely aside from the question of pleading, this suggestion of appellant may be ignored because it is absolutely clear from the evidence that a sufficient amount of water was flowing by appellant's headgate to have satisfied his demands. Therefore the act of the water-master in closing the headgate was the proximate cause of appellant's failure to get the water claimed, and not the erection or maintenance of the dam and reservoir.

An appropriator is entitled to have the full quantity of water called for by his appropriation flow in the natural stream, or in his ditch or canal, in such a way that he can enjoy its use, and for any material interference with this flow of water, by which his right to its use is substantially impaired, he may maintain an action for damages. (3 Kinney on Irrigation and Water Rights, sec. 1662, p. 3054.) Of course those who act jointly or concurrently in depriving an appropriator of the right to use the water to which he is entitled are jointly liable. (3 Kinney on Irrigation and Water Rights, sec. 1685.) In this respect the case does not differ from that of any other tort.

" . . . . All persons who command, instigate, encourage, advise, countenance, co-operate in, aid or abet the commission of a trespass by another, are cotrespassers with the person committing the trespass and are each liable as principals to the same extent and in the same manner as if they had performed the wrongful act themselves." (26 R. C. L., "Torts," sec. 15, p. 767.)

"A ratification or adoption of a trespass also makes one a joint trespasser with the wrongdoer provided the act benefited or was done in the interest of the person adopting the same and was ratified with the full knowledge of the facts." (Ibid.)

The evidence introduced by appellant utterly fails to show that respondent aided, abetted or encouraged the water-master, Chapman, to close appellant's headgate or keep the water from him, or knew anything about it. There is no

evidence to show that respondent had any knowledge that the water-master was not taking into consideration the 20 second-feet of water arising from the springs in the bed of its reservoir in distributing the water to appellant and others. Ratification in order to make one liable for a tort must be made with a full knowledge of the facts or with a determination without inquiry to assume the responsibility for the act. (*Fox v. Jackson,* 8 Barb. (N. Y.) 355; *Adams v. Freeman,* 9 Johns. (N. Y.) 118; *Lewis v. Reed,* 13 Mees. & W. 834.) The mere fact that a party innocently receives a benefit from the wrongful act of another is not conclusive on the question of his liability. (*Hyde v. Cooper,* 26 Vt. 552.) If one receives property as the result of the wrongful act of another and persists in retaining it after learning that he has no right to its possession, he is, of course, liable. But it does not follow that one is liable in damages because he has innocently derived a temporary or incidental benefit through the wrongful act of another, where he does not persist in availing himself of a continuing benefit after learning the facts. It is questionable on this record whether respondent benefited in contemplation of law by the act of the water-master in closing appellant's headgate. Respondent was a Carey Act company, and still retained control of the canal or operating company through control of a majority of the stock. It did not use the water itself. If, through the act of the water-master, some of respondent's stockholders received water to which they were not entitled, it would not appear that the respondent itself benefited in contemplation of law. But, if it be conceded for the sake of argument that it did, nevertheless, in view of the facts stated above, it cannot be said that it participated or concurred in the act of the water-master in closing appellant's headgate or ratified it. The water-master was not its agent. He was acting under C. S., sec. 5609, which provides for the election of a water-master at a meeting of persons having adjudicated rights to use the waters of a stream, and for the appointment of a water-master if such meeting be not held. It does not appear from the record

whether he was elected or appointed, but at any rate the uncontradicted evidence is to the effect that he was the water-master in 1919 and also a special deputy of the commissioner of reclamation. As such he was paid by all the water users whom he served, his compensation being made a charge against the land of the users, as provided by the statute. (C. S., sec. 5614.) He was therefore not the agent of appellant or respondent but a ministerial officer. Respondent was no more responsible for his act than appellant or any other water user, so long as it did not aid, abet or encourage him or ratify his act. For the reasons given above the trial court acted correctly in granting the motion for nonsuit upon the ground, set forth in the motion, that respondent did not deprive appellant of the use of water for irrigation or invade any right of appellant.

We do not pass upon the question whether the water-master acted lawfully in closing appellant's headgate on June 19, 1919, and failing to deliver water to him for most of the season thereafter, it being unnecessary to do so.

The judgment is affirmed, with costs to respondent.

Budge and William A. Lee, JJ., concur.