655 P.2d 116

Weldon C. SMITH and Elda Smith,
Plaintiffs-Appellants,

v.

Keith THOMPSON and Ross C. Bird,
Defendants-Respondents.

No. 13918.

Court of Appeals of Idaho.

Dec. 8, 1982.

Raymond N. Malouf, of Malouf, Malouf & Jenkins, Logan, Utah, and David L. Evans, Malad City, for plaintiffs-appellants.

Martin R. Ward, of Maguire, Kisling & Ward, Pocatello, for defendant-respondent Bird.

WALTERS, Chief Judge.

Keith Thompson set fire to a residence owned by Weldon and Elda Smith, destroying the building and personal property within it. Thompson later said that his employer, Ross Bird, encouraged him to burn down the house. The Smiths sued Thompson and Bird to recover damages for the destroyed property. Thompson admitted his liability in an agreed stipulation for judgment, and the Smiths dismissed their claim against him in return for his agreement to pay them a sum of money. After this agreement was executed, the district court entered summary judgment dismissing the Smiths' claim against the employer, Bird. The Smiths appeal the summary judgment.

■ On an appeal from summary judgment, this Court will determine whether there exists a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Mitchell v. Siqueiros,* 99 Idaho 396, 398, 582 P.2d 1074, 1076 (1978); *Stewart v. Hood,* 95 Idaho 198, 506 P.2d 95 (1973). In making these determinations, we will construe all facts in the record, together with all reasonable inferences from the evidence on file, in the light most favorable to the party opposing the motion for summary judgment. *Mitchell, supra;* I.R.C.P. 56(c). We conclude that summary judgment in favor of Bird was improper, and we reverse.

The pertinent parts of the record in this case consist only of the pleadings, and two depositions of Keith Thompson. This record, construed in a light most favorable to the Smiths, shows the following.

The Smiths owned a house located near Ross Bird's residence. The Smiths' house was used primarily not as a residence but for the storage of personal belongings. Bird and his other neighbors considered the house a dilapidated eyesore. In addition to the appearance of the building, obnoxious odors, attributable at least in part to a family of skunks who had taken shelter underneath the house, came from the building.

Thompson was an impressionable, twenty-year old man employed as Bird's hired hand. Thompson held deep respect for Bird. Bird was Thompson's role model, and influenced not only Thompson's work habits, but also his personal life. Thompson wanted to be like Bird, and he tried to please Bird in all he did.

Over the course of Thompson's employment, his responsibilities had grown to the point where Bird trusted Thompson to care for Bird's dairy operation when Bird had to travel. Thompson had independent authority to initiate and carry out projects on the farm. Thompson stated that Bird did not have to tell him expressly when and how to do a chore. All that was needed was a suggestion that the job needed to be done. In short, Bird was a figure of authority to Thompson, who could get the young man to carry out various projects by a mere suggestion or encouragement.

Several times prior to the incident in question, Bird had remarked to Thompson how much he, Bird, would like to see Smiths' house burned down. The subject apparently first arose after Bird and Thompson had reshingled and painted Bird's house. The Smiths' run-down house detracted from the tidy appearance of Bird's residence.

On the Friday night before Thompson set fire to the house, Bird and Thompson were discussing the house while milking cows in Bird's barn. Bird again strongly suggested that it would be nice if someone burned down the Smiths' house. Saturday morning, a similar conversation occurred. Bird never specifically told Thompson to burn down the house, but during the conversation, he mentioned that if someone were to burn down the house, it should be done while Bird was out of town so that he

would not get blamed. Bird left for Wyoming after the milking was finished that morning, leaving Thompson alone to care for the dairy farm.

That Saturday night while Bird was out of town, Thompson decided to burn the Smiths' house. When he returned home that night from a date in town, he took a can of gas, a crow bar, and a flashlight to the Smith property. After entering the house, he poured gas over the floor. Before he had emptied the gas can, however, his conscience overcame him and he decided not to go through with his plan. Leaving the house he stumbled and fell, dropped his flashlight and spilled gas on himself. When he could not find his flashlight, he panicked and lit his cigarette lighter to see in the dark. The gas fumes ignited, blowing him into the next room. Although severely burned and in shock, he was able to escape and get treatment, but the house was destroyed.

The district court recognized that Bird had suggested to Thompson that the Smith residence should be burned down. However, because it was not within the scope of Thompson's employment to burn houses, and because no negligent acts during the course of Thompson's employment caused the fire, the court ruled that Bird had no liability for the damages to the Smiths' property under any application of a master and servant doctrine. We agree with this conclusion.

A master, or employer, is responsible for the torts of his servant, or employee, when they are committed within the scope of the servant's employment. *Scrivner v. Boise Payette Lumber Co.,* 46 Idaho 334, 268 P. 19 (1928). It is an uncontested fact that torching neighboring residences was not within the scope of Thompson's employment as a hired hand for Bird.

The trial court also determined that because Bird did not specifically direct Thompson to burn the building, nor aid in the preparation or planning of the arson, no liability can be placed on Bird on a joint tortfeasor doctrine. With this conclusion we disagree.

It is well established in Idaho that a person may be liable as a contributing tortfeasor, joint tortfeasor, or "cotrespasser," for harm resulting to a third person from the tortious conduct of another. *See, e.g., Lorang v. Hays,* 69 Idaho 440, 209 P.2d 733 (1949); *Bailey v. Idaho Irr. Co., Ltd.,* 39 Idaho 354, 227 P. 1055 (1924). "All persons who command, instigate, encourage, advise, countenance, cooperate in, aid or abet the commission of a trespass by another are cotrespassers with the person committing the trespass." *Bailey v. Idaho Irr. Co., Ltd.,* 39 Idaho at 358, 227 P. at 1056.

Furthermore, when the tortious conduct is the cause of a single and indivisible harm, each contributing tortfeasor is liable to the same extent and in the same manner as if they had performed the wrongful act themselves; i.e., they are jointly and severally liable. *See Lorang v. Hays, supra; Bailey v. Idaho Irr. Co., Ltd., supra; see generally* Restatement (Second) of Torts §§ 875, 876 (1977); *and* cases collected at 74 Am.Jur.2d *Torts* § 66 (1974).

Within the definition of a contributing or joint tortfeasor stated in *Bailey, supra,* the Smiths are seeking to impose liability upon Bird for allegedly encouraging Thompson to commit the arson. Bird's remarks—that he wished the house were burned down and that, if the house were to be burned down, it should be done when he was out of town—may be deemed an encouragement. These remarks were made at a time prior to the arson. To make Bird liable as having encouraged a trespass by remarks made on a prior occasion, those words must have had a direct relation to the trespass, and must have been calculated and intended to produce it. *See Bird v. Lynn,* 49 Ky. (10 B.Mon.) 422 (Ky.1850); Restatement (Second) of Torts, § 876(b) (1977); W. Prosser, *Law of Torts* § 46 (4th ed. 1971). Unless Bird made those remarks for the purpose of inciting the arson, and the arson thereby resulted, then Thompson, though in fact committing the act, should be regarded as a volunteer. Bird would

912

therefore not be a joint tortfeasor on the ground of having encouraged the trespass.

■ Read in a light most favorable to the Smiths, the record in this case discloses a strong suggestion by Bird that young Thompson should burn down Smiths' residence. The record also discloses the fact that Thompson was easily influenced by Bird and was over zealous in his desire to please the man who was a role model in his life. We conclude that a trier of fact could determine from this record that Bird encouraged Thompson to commit the arson, that Bird's encouragement actually initiated Thompson's wrongful conduct, and that but for Bird's encouraging remarks, Thompson would not have burned down the Smiths' house.

No direct evidence of Bird's intent in suggesting that the house should be burned down is in the record. However, from his remarks that if the house were to be burned down, it should be done when he was out of town, a trier of fact could infer Bird calculated and intended that Thompson act upon his suggestion. Also, from Thompson's respect for Bird and his desire to please the man, it could be inferred that Bird reasonably should have foreseen that his remarks would have induced Thompson to burn the house down.

We conclude that genuine issues of material fact exist which preclude summary judgment in this case. We reverse the judgment and remand the case for trial. Costs to appellants, Smith; no attorney fees on appeal.

SWANSTROM and BURNETT, JJ., concur.