706 P.2d 94

Joe NELSON and Clara Nelson, husband and wife, Plaintiffs-Appellants,

v.

BOUNDARY COUNTY Idaho; the Boundary County Board of County Commissioners; the Boundary County Restorium Governing Board; the Boundary County Community Restorium; Herman Messenbrink, Roy Grove and Gil Hagen, Individually and In Their Official Capacity as Boundary County Commissioners; Bill Currie, Dennis Ponsness and Harold Ray Stueve, In Their Official Capacities as Boundary County Commissioners; Thomas "Tommy" Hopkins, Norma Estep and Kathleen Wells, Individually and In Their Official Capacity as Boundary County Restorium Governing Board Members; Jessie Hydorn, Fred Schiller, and Jean Plato, In Their Capacity as Boundary County Restorium Governing Board Members, Defendants-Respondents.

No. 14764.

Court of Appeals of Idaho.

Sept. 3, 1985.

Raymond C. Givens, Coeur d'Alene, for plaintiffs-appellants.

Scott W. Reed, Coeur d'Alene, for defendants-respondents.

## SWANSTROM, Judge.

This is an appeal by Joe Nelson, a former county employee, from a summary judgment dismissing his claim for compensation for any injury caused by the manner in which he was terminated. His appeal centers on whether the "public" meeting requirement of I.C. § 31–713 prevents county commissioners from conducting closed "executive" sessions which otherwise would be permitted under I.C. § 67–2345. On appeal, Nelson contends that the district court erred in holding I.C. § 67–2345 controls over I.C. § 31–713. Nelson further argues that if I.C. § 67–2345 does control, thus allowing the county commissioners to hold executive sessions for personnel matters, then it violates his rights of equal protection, freedom of speech and assembly, and the pursuit of happiness and it denies him liberty and property without due process of law. We affirm the judgment.

Nelson was employed as manager of the Boundary County Restorium, a county-operated home for the elderly. He had no written contract of employment and was paid on a monthly basis. The supervision of the Restorium was delegated by the Board of County Commissioners to a separate governing board of the Restorium. The record shows that certain employees complained to the Restorium board about personnel policies adopted by Nelson. Thereafter, a series of meetings took place, conducted first by the Restorium's governing board and later by the Board of County Commissioners. The meetings, which involved inquiry into Nelson's method of management, were conducted in executive sessions and therefore were not open to the public. Apparently, at the final meeting of the Restorium board, a citizen suggested that charges concerning possible sexual harassment or misconduct were being made by the board against Nelson. However, a member of the board immediately made it clear to those attending the public meeting that the board had not made any charges against Nelson. At the conclusion of that meeting the Restorium board members resigned en masse.

The Board of County Commissioners then assumed the responsibility for conducting further hearings recommended by the Restorium board "regarding working conditions as they exist between the administration and the employees." The commissioners conducted hearings on four days in executive sessions to interview witnesses. Joe Nelson and his attorney attended these hearings. At the final executive meeting, the Board of County Commissioners made findings of fact and then reconvened in open session and passed a resolution terminating Nelson's employment. The findings of fact, consisting of the reasons for Nelson's termination, have never been disclosed to the public.

The scope of our review is limited. As this is an appeal from a summary judgment, we need determine only whether there are genuine issues of material fact, and whether Boundary County is entitled to a judgment as a matter of law. I.R.C.P. 56(c). It appears the material facts are not in dispute. Therefore, it must be decided whether the judgment was correct as a matter of law.

## I

Nelson first presents an issue of statutory construction. He alleges that Boundary County violated I.C. § 31-713. This section provides in relevant part that: "All meetings of the board [of county commissioners] must be public...." This statute was first adopted in 1869. In 1961 the Legislature adopted an open meeting law providing that the meetings of all boards, commissions and authorities of any county, city or village shall be public meetings and providing exceptions for executive sessions. *See,* 1961 Idaho Session Laws, ch. 272, at 482, codified as I.C. § 59-1024. This section was repealed in 1974 when Idaho adopted the present open meeting law, I.C. § 67-2340 to -2347. This law also specifically applies to counties. I.C. § 67-2341(3)(c). Therefore, the open meeting law and I.C. § 31-713 govern meetings of the Board of County Commissioners. Both provide for public meetings of the board. The relevant distinction is that I.C. § 67-2345(1)(b) authorizes executive sessions "to consider the evaluation, dismissal or disciplining of, or to hear complaints or charges brought against, a public ... employee...." Nelson argues that I.C. § 31-713 is more specific and, therefore, should control over the open meeting law.

In one sense I.C. § 31-713 is more specific, in that it is restricted in its language solely to meetings of boards of county commissioners. The open meeting law is broader but it is, nonetheless, just as "specific" in its applicability to the governing body of "any county." I.C. § 67-2341. The applicability of the open meeting law to meetings of boards of county commis-

sioners is not therefore merely implied, it is clearly stated in the more recent enactment. Moreover, the open meeting law is more specific in the sense that it defines various types of meetings and it states requirements to assure access by the public to meetings and to records of action taken. More to the point, § 67-2345 specifically lists exceptions when executive sessions are permitted.

■ Nelson also points to the language of I.C. § 67-2345 which states in part "[n]othing contained *in this act* shall be construed to prevent ... a public agency from holding an executive session ... [for one of the specified purposes set forth]." (Emphasis added.) Nelson suggests that the emphasized language shows a legislative recognition that provisions *in other acts*—e.g. I.C. § 31-713—may bar the holding of executive sessions for any purpose. While this meaning could be attributed to the emphasized words of § 67-2345, we do not believe this is the purpose of those words. We agree with the district court when it said:

> It would indeed be a strange interpretation of legislative intent for the Court to hold that only Boards of County Commissioners would be prevented from holding an executive session when dealing with an employee and that all other public agencies would be so authorized.

We hold that there is a clear and definite conflict between the provisions of §§ 67-2345 and 31-713. We choose to follow the well-established rule that when two governmental statutes are in irreconcilable conflict, the one enacted later in time governs. *Mickelsen v. City of Rexburg,* 101 Idaho 305, 612 P.2d 542 (1980).

■ Nelson further contends Boundary County violated I.C. § 67-2345(3) which provides that: "No executive session may be held for the purpose of taking any final action or making any final decision." Nelson argues that the county commissioners violated the statute when they made their final decision to fire him in an executive session. The district court found that after holding executive sessions, the county com-

missioners made their final decision to terminate Nelson in an open and public meeting in compliance with the statute. Idaho Code § 67–2345(1)(b) specifically allows the consideration of the dismissal of an employee in an executive session. Therefore, where an executive session is authorized, the deliberating process can be conducted in a closed session. In our view, there is no requirement that private discussions of personnel matters must be repeated in public. If that were the case, the executive sessions would be without meaning. *See Hokanson v. High School District No. 8 of Pima County,* 121 Ariz. 204, 589 P.2d 907 (Ariz.App.1979) (interpreting an Arizona statutory provision identical to I.C. 67–2345(3)).

Nelson's reliance on *State v. City of Hailey,* 102 Idaho 511, 633 P.2d 576 (1981) is misplaced. *Hailey* merely held that where deliberations are conducted at a meeting which is *in violation* of I.C. § 67–2340, but no final decision is reached, the impropriety of that meeting will not taint a subsequent valid meeting which consists of a final action based upon earnest consideration. *See also Baker v. Independent School District of Emmett,* 107 Idaho 608, 691 P.2d 1223 (1984). In the case before us, the executive sessions were in compliance with the law. Further, the final decision was rendered in an open session. Therefore, we uphold the district court's conclusion that Boundary County was in compliance with the statute.

## II

Next we turn to Nelson's various constitutional attacks, the first of which involves the equal protection provision of article I, § 2 in the Idaho Constitution. Nelson argues that to interpret I.C. § 67–2345(1)(b) as not providing county employees with the right to a public employment termination hearing unfairly discriminates against county employees because city and state employees have such a right. I.C. § 50–1609, I.C. § 67–5316(a). However, an examination of I.C. § 50–1609 reveals that it merely provides an optional civil service system which every city government may chose to adopt. Therefore, not all city employees have the right to a public termination hearing. However, I.C. § 67–5316(a) does provide a civil service system for state employees with a right to a public termination hearing. Thus, the issue of equal protection is raised.

However, we will not review the constitutionality of a statute unless it is absolutely necessary to the decision of a case. *Packard v. Joint School District No. 171,* 104 Idaho 604, 661 P.2d 770 (Ct. App.1983). There must be a connection between the challenged statute and the litigation before we are required to consider the statute's constitutionality. *State v. Curtis,* 106 Idaho 483, 680 P.2d 1383 (Ct. App.1984). In other words, "the injury which gives a party standing to assert a constitutional claim must be a deprivation of the very right upon which the claim is founded." *Matter of Adoption of Hadtrath,* 121 Ariz. 606, 592 P.2d 1262, 1265 (1979).

In the case before us, Nelson argues he has been injured by I.C. § 67–2345 permitting closed meetings for personnel matters. However, the allegation is not supported by the facts or the issues raised by Nelson. The alleged injury to his reputation stems *not* from the closed meetings, the findings of fact, or even the termination itself, but from the supposed rumors and gossip aired outside any closed meeting. No injury due to the closed meetings has been established. The ultimate causes for the discharge, presumably discussed at the closed meetings, are not challenged. Nelson apparently desires a public forum to refute the rumors with which he was not charged. We fail to see a connection between the provisions allowing closed meetings and Nelson's claim that he has been damaged by community rumors. Accordingly, we find Nelson has not shown that his right to equal protection has been infringed.

Nelson next contends that he was denied his liberty and property interest without due process. It is undisputed that

Nelson did not have an employment contract for a fixed period of time. Nor did he have tenure by either statute, ordinance, rule or regulation. The arrangement Nelson had may best be expressed by the affidavit of the former chairman of the Board of County Commissioners which hired Nelson. That affidavit, filed by Nelson in opposition to the defendants' motion for summary judgment, stated:

> My understanding of the employment arrangement was that Joe would have an initial trial period of a few months and if things worked out and he performed the job satisfactorily, the job was his until he did something that merited his removal. Joe satisfactorily performed the trial period.

The district court found that "By Nelson's own [deposition] testimony, the Board of County Commissioners hired him on the basis that 'if it worked out, I could have it as.long as I wanted it.'" It must first be determined whether this arrangement is sufficient to create a property right which requires notice and due process hearing. The district court held that it was not. However, we are obliged to take the opposite view. Our reasons are as follows:

> On an appeal from summary judgment, this Court will determine whether there exists a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Mitchell v. Siqueiros*, 99 Idaho 396, 398, 582 P.2d 1074, 1076 (1978); *Stewart v. Hood*, 95 Idaho 198, 506 P.2d 95 (1973). In making these determinations, we will construe all facts in the record, together with all reasonable inferences from the evidence on file, in the light most favorable to the party opposing the motion for summary judgment. *Mitchell, supra;* I.R.C.P. 56(c).

*Smith v. Thompson,* 103 Idaho 909, 910, 655 P.2d 116, 117 (Ct.App.1982). It can be inferred from the former commissioner's affidavit that once the probationary period was successfully passed, Nelson's employment would continue unless or until it was terminated for cause.

It has been recognized that a property interest in employment can be created by ordinance or by implied contract. *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). We take the position, therefore, on review of the order granting summary judgment, that Nelson had a reasonable expectation of employment meriting protection as a property interest. *But compare, MacNeil v. Minidoka Memorial Hospital,* 108 Idaho 588, 701 P.2d 208 (1985).

■ The question we reach next is whether Nelson was afforded procedural due process in the termination of his employment. As we have already noted the Board of County Commissioners held hearings for four days. These were in executive sessions. Joe Nelson and his attorney attended. Numerous witness, favorable and unfavorable to Nelson were questioned by the commissioners, their attorney and Nelson's attorney. A statement of "charges" concerning management practices at the Restorium were furnished to Nelson through a letter from the commissioner's attorney. We hold that Nelson was given adequate notice of and an opportunity to respond to the charges made against him. We note that none of those charges included allegations of any sexual harassment of employees. We have already held that the commissioners were authorized by statute to conduct executive sessions "to consider the evaluation, dismissal or disciplining of, or to hear complaints or charges brought against [Nelson]...." I.C. § 67–2345(1)(b). We know of no constitutional requirement that hearings for such purposes must be publicly conducted, nor has appellant cited us to any cases so holding. We therefore conclude that Nelson's constitutional right to procedural due process has not been abridged.

Nelson also claims that he has a protected "liberty" interest which he was deprived of without due process. He asserts that his dismissal without stated reasons has created a stigma that has severely damaged his reputation in the community and has prevented him from obtaining similar employment elsewhere. The remedy for a violation of a liberty interest is to accord the individual an opportunity to refute the charges in a proper hearing. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In determining whether an employee has been deprived of a liberty interest in the termination of his employment, the critical factor is whether the employer makes a charge which might seriously damage the employee's standing and reputation in connection with the termination. *Haimowitz v. University of Nevada,* 579 F.2d 526 (9th Cir.1978).

Nelson does not allege that the respondents in any way publicized false, defamatory, or stigmatizing statements about him in connection with his termination. In fact, no reasons at all were ever made public. The facts found by the commissioners as cause for terminating Nelson's employment have not been challenged on appeal. That cause has nothing to do with any purported sexual harassment of employees. We conclude therefore, that not only has Nelson failed to show he has been deprived of a liberty interest in the termination of his employment, *Bishop v. Wood, supra,* and *Haimowitz v. University of Nevada, supra,* he has also not shown that he was deprived of any procedural due process in the termination of any such interest.

Nelson next contends that a refusal of the county commissioners to hold a public hearing and to release their findings of fact to the public have violated his freedom of speech and assembly protected by article I, §§ 9 and 10 of the Idaho Constitution. We find this argument to be without merit. Nelson does not contend he was fired in retaliation for exercising his right to freedom of speech and association.

Rather, Nelson contends that the county must provide him with a forum to speak. This misconstrues the constitutional protection of speech and assembly. The right to speech and assembly, in some cases, cannot be denied. However, this does not require the county to provide a forum for Nelson to speak or to assemble an audience.

Nelson finally argues that he has been denied his pursuit of happiness protected by article I, § 1 of the Idaho Constitution. We find this argument to be meritless. It is true that the concept of pursuit of happiness has been intertwined with a person's right to follow his chosen occupation. *See Berry v. Koehler,* 84 Idaho 170, 369 P.2d 1010 (1961). However, this concept does not stretch as far as to prohibit the otherwise proper termination of a public employee.

The judgment of the district court is affirmed. Costs to respondents. No attorney fees on appeal.

WALTERS, C.J., and BURNETT, J., concur.