John DOE, on his own behalf and on behalf of a class of those similarly situated, Appellants (Plaintiffs below),

v.

Catherine O'CONNOR, in her official capacity as Director of the Indiana Criminal Justice Institute and James A. Herman, in his official capacity as Sheriff of Allen County, on his own behalf and on behalf of those similarly situated, Appellees (Defendants below).

No. 49S00–0301–CV–1.

Supreme Court of Indiana.

June 26, 2003.

Kenneth J. Falk, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Thomas M. Fisher, Special Counsel, Doug Webber, Deputy Attorney General, Indianapolis, IN, Attorneys for Catherine O'Connor.

John Feighner, Fort Wayne, IN, Attorney for James A. Herman.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

The Legislature requires photographs and home addresses of people who have been convicted of sex offenses be posted on the Internet. John Doe, a man previously convicted of a sex offense who has completed his sentence, contends that he has a constitutional right to a court hearing on whether he poses any future danger to society before his picture and address are posted. Because the material is posted based on the fact of previous conviction, not the fact of current (or future) dangerousness, Doe has no constitutional right to the hearing he seeks.

### Background

In 1994, the Indiana General Assembly enacted a sex offender registry law. Ind. Code § 5–2–12 *et seq.* Under this law, individuals convicted of predicate sex and violent offenses specified by the law must register with local law enforcement authorities. Ind.Code § 5–2–12–5 (superseded Jan. 1, 2003).[1] The law requires the Indiana Criminal Justice Institute ("CJI") to maintain and publish for public dissemination in hard copy and (since 1996) on the Internet, a directory of the names, aliases, dates of birth, physical description, county of residence, and description of offense of those convicted. This directory is known as the Indiana Sex and Violent Offender Registry. Ind.Code § 5–2–12–11 (superseded Jan. 1, 2003); Ind.Code § 5–2–6–3. We will refer to it in this opinion as the "1994 Registry."

The General Assembly made several changes to the sex and violent offender registry law, effective January 1, 2003. The directory is now called the Indiana Sex and Violent Offender Directory. Ind. Code § 5–2–6–3(10). We will refer to it as the "2003 Directory." Relevant to this case, the new law requires individuals subject to its registration requirements to provide a recent photograph of themselves when registering and re-registering. Ind. Code § 5–2–12–6(4). They must re-register every year and update registries if they move or change their names due to marriage. Ind.Code § 5–2–12–8. Finally, under the new version, the CJI is required to publish the home addresses of the registrants in addition to information already published. Ind.Code § 5–2–6–3.5(c).

A second new statute requires Indiana county sheriffs to publish the home addresses and photographs of convicted sex and violent offenders in a separate registry. Ind.Code § 36–2–13–5.5. We will refer to it as the "Sheriffs' Registry." The purpose of the Sheriffs' Registry is "to inform the general public about the identity, location, and appearance of every sex offender residing within Indiana. The web site must provide information regarding

---

**1.** The predicate offenses that result in a duty to register and ultimate publication in the registry are: rape (Ind.Code § 35–42–4–1); criminal deviate conduct (Ind.Code § 35–42–4–2); child molesting (Ind.Code § 35–42–4–3); vicarious sexual gratification (Ind.Code § 35–42–4–5); child solicitation (Ind.Code § 35–42–4–6); child seduction (Ind.Code § 35–42–4–7); sexual misconduct with a mi-nor (Ind.Code § 35–42–4–9); incest (Ind. Code § 35–46–1–3); sexual battery (Ind.Code § 35–42–4–8); kidnapping if the victim is under 18 (Ind.Code § 35–42–3–2); criminal confinement if the victim is under 18 (Ind.Code § 35–42–3–3); attempt or conspiracy to engage in any of the forgoing; and crimes in other jurisdictions that are substantially similar to those above. Ind.Code § 5–2–12–4(a).

each sex offender, organized by county of residence." *Id.* § 36–2–13–5.5(a). Both the 2003 Directory and the Sheriffs' Registry will be published on the Internet and will contain the photographs and addresses as well as other information about convicted sex offenders currently published by CJI in the 1994 Directory. *Id.* § 36–2–13–5.5. Included with this information is a notice using the following or similar language:

> Based on information submitted to the criminal justice institute, a person whose name appears in this directory has been convicted of a sex offense or a violent offense or has been adjudicated a delinquent child for an act that would be a sex offense or violent offense if committed by an adult.

Ind.Code § 5–2–6–3.5(d). There is no apparent limit to the duration during which a registrant's information will be posted in the 2003 Directory and the Sheriffs' Registry. In fact, the website states: "Information about an offender remains in the directory indefinitely or until the Institute receives a copy of the individual's death certificate or court notification that the person's conviction has been overturned." *Indiana Sex and Violent Offender Directory, at http://www.state.in.us/serv/cji—sor* (last visited June 26, 2003).

The 2003 Directory and the Sheriffs' Registry are part of a national effort to increase public safety by identifying convicted sex and violent offenders. In 1994, Congress passed the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program (Title XVII of the Violent Crime Control and Law Enforcement Act of 1994, codified at 42 U.S.C. § 14071). The Wetterling Act requires states to create registries of offenders convicted of sexually violent offenses or crimes against children, although it appears to permit such registries to be based on a risk assessment. The Act requires offenders to verify their addresses annually for a period of ten years and for life for sexually violent predators. 42 U.S.C. § 14071(b)(6). States that do not establish compliant registration programs are subject to a ten percent reduction of certain federal grants otherwise available for a variety of crime prevention and interdiction programs. 42 U.S.C. § 14071(g)(2). Indiana currently receives approximately $10 million per year from these grant programs, some of which is used to fund judicial initiatives.

Petitioner John Doe has presented the Court with an affidavit to the following effect: that he resides in Allen County and was convicted of an offense listed in Ind. Code § 5–2–12–4(a) after fondling a minor female relative on an isolated occasion; that he received a suspended sentence for the offense; that he has not been convicted of other offenses or committed any other offenses; and that he does not believe he is likely to re-offend, nor does he believe he is a threat to the community. Because of his conviction, he was listed in the 1994 Registry prior to January 1, 2003, and since then has been listed in the 2003 Directory and the Sheriffs' Registry.

Doe says that he resides with his wife and children in Allen County, in a neighborhood where he does not believe his past is known; that his children attend schools where his past is not known; and that he is concerned about the ramifications of dissemination of his photograph and home address. He seeks an opportunity to challenge the inclusion of his information in the 2003 Directory and the Sheriffs' Registry by demonstrating that he is neither dangerous nor likely to re-offend.

Doe sought a preliminary injunction to enjoin the addition of former offenders' home addresses and photographs to the 2003 Directory and the Sheriffs' Registry.

The trial court denied the preliminary injunction. He appealed that decision, asking this Court to accept jurisdiction under Ind. Appellate Rule 56(A) and to stay the implementation of the 2003 Directory and the Sheriffs' Registry until we rule on his claims. We accepted jurisdiction and granted the temporary stay requested.

## Discussion

Doe does not contend that the posting of information about convicted sex offenders on the Internet in general is unconstitutional. His argument is much more modest. He claims instead that before his photograph and home address are posted on the 2003 Directory and the Sheriffs' Registry, he has a constitutional right to a hearing on whether he poses any danger to society.

Doe initially claimed that the posting of his photograph and home address to the 2003 Directory and the Sheriffs' Registry violated provisions of both the United States and Indiana Constitutions. While this appeal has been pending, the United States Supreme Court decided *Connecticut Dep't of Pub. Safety v. Doe,* ── U.S. ──, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003), which upheld the constitutionality of a similar registry statute against a similar claim.[2] As such, Doe has withdrawn his federal constitutional challenge. (Appellants' Notice of Supplemental Authority and Notice of Withdrawing of Portion of Argument at 1, ¶ 2.)

I

Doe first contends that the statutory scheme at issue violates Art. I, § 12, of the Indiana Constitution, the first sentence of which provides: "All courts shall be open; and every person, for injury done to him in his person, property, or *reputation,* shall have remedy by due course of law." (emphasis added). His claim is that his constitutional right to due course of law with respect to his reputation would be violated by the posting of his photograph and home address on the web-based 2003 Directory and Sheriffs' Registry unless he is first provided a hearing as to whether he poses any danger to society.

We have previously held that we will employ the same methodology when analyzing a claimed denial of procedural due process violation of the Due Course of Law Clause of Art. I, § 12, as the Supreme Court as used to analyze claimed violations of the Due Process Clause. *McIntosh v. Melroe Co.,* 729 N.E.2d 972, 976 (Ind. 2000); *Indiana High Sch. Athletic Ass'n, Inc. v. Carlberg,* 694 N.E.2d 222, 241 (Ind. 1997). Although the recent *Connecticut Dep't of Pub. Safety* case does not control our analysis, we employ a similar method of analysis and reach a similar result.

In the *Connecticut Dep't of Pub. Safety* case, the challenged registry was also to be posted on the Internet and made publicly available in certain state offices.[3] The

---

2. *Connecticut Dep't of Pub. Safety,* which rejected a claim that Connecticut's sexual offender registry violated the Due Process Clause, ── U.S. at ──, 123 S.Ct. at 1162, was decided at the same time as the Court rejected a claim that Alaska's sexual offender registry law violated the Ex Post Facto Clause. *Smith v. Doe,* ── U.S. ──, ──, 123 S.Ct. 1140, 1154, 155 L.Ed.2d 164 (2003). The Indiana Court of Appeals has rejected a claim that the 1994 Directory statute violates the Ex Post Facto Clause and no

similar claim is made in this case. *Spencer v. O'Connor,* 707 N.E.2d 1039, 1046 (Ind.Ct. App.1999), *trans. denied,* 726 N.E.2d 305 (Ind. 1999) (table).

3. The Connecticut statute, however, allowed certain sex offenders to avoid the registration requirements if "[the] offense was unconsented sexual contact," or "sexual intercourse with a minor aged between 13 and 16 while the offender was more than two years older than the minor, provided the offender was under age 19 at the time of the offense." *Id.*

Connecticut statute required the covered offenders information to provide their names, addresses, photographs, and DNA samples. A convicted sex offender covered by the law challenged it as a violation of his rights under the Due Process Clause of the Fourteenth Amendment by depriving him of a liberty interest—specifically, injuring his reputation—without notice or a meaningful opportunity to be heard. *Connecticut Dep't of Pub. Safety,* —— U.S. at —— - ——, 123 S.Ct. at 1163–64. While the Court had held in *Paul v. Davis,* 424 U.S. 693, 712, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), that injury to reputation did not constitute deprivation of a liberty interest, it found it unnecessary to even address whether any deprivation of a liberty interest had occurred. *Connecticut Dep't of Pub. Safety,* —— U.S. at ——, 123 S.Ct. at 1164. This was because, the Court said, Connecticut expressly based its registry requirement on the fact of the previous conviction, not the fact of current (or future) dangerousness. *Id.* "[D]ue process d[id] not entitle [the offender] to a hearing to establish a fact that is not material under the Connecticut statute." *Id.* Rather, the registration requirements were based on conviction alone—"a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest." *Id.*

Doe argues that because Art. I, § 12, expressly includes reputation as an interest entitled to protection by the due course of law, the Indiana Constitution recognizes an interest here even though *Paul v. Davis* holds that there is no counterpart federal right. But we see the issue much the same way the Supreme Court did in *Connecticut Dep't of Pub. Safety,* that is, even if Doe is at risk of deprivation of a constitutionally protected interest, due course of law does not entitle him to a hearing to establish a fact—current or future dangerousness—that is not material under the 2003 Directory and the Sheriffs' Registry statutes. To paraphrase the Supreme Court, even if Doe could prove that he is not likely to be currently dangerous, the Legislature has decided that the registry information of all sex offenders—currently dangerous or not—must be publicly disclosed. *Connecticut Dep't of Pub. Safety,* —— U.S. at ——, 123 S.Ct. at 1164. Doe is not entitled to a hearing under Art. I, § 12.

Doe accurately points out that this statute can have extraordinarily harsh consequences, perhaps consequences not intended by the Legislature. For example, an 18–year old young man who has sexual intercourse with his 15–year, 11 month old girlfriend is guilty of sexual misconduct with a minor. See Ind.Code § 35–42–4–9. This young man is subject to the annual registration requirements of the statute for ten years (Ind.Code § 5–2–12–13(a)) and will have his photograph and current address posted on the Internet for the rest of his life. Ind.Code § 5–2–6–3.5(a) (2003) ("The sex and violent offender directory ... must include the names of each offender who is *or has been required* to register under IC 5–2–12.") (emphasis added). Perhaps sex offenders of this type should have an opportunity to make their case that they pose no danger to society but that is a matter for legislative determination.

II

■ Doe also contends that he has a privacy right protected by Art. I, § 1,[4] in

at 1165 (Souter, J., concurring) (citations omitted). There were even circumstances

that permitted a restriction of the dissemination of registry information. *Id.*

4. Art. I, § 1 states:

keeping photographs and current addresses private. We have never had occasion to examine the extent to which an ex-offender has the rights, asserted but a number of our sister states have addressed similar privacy issues under constitutional provisions with very similar language as our Art. I, § 1, and have rejected these claims.[5]

Most notably, in *State v. Williams*, 88 Ohio St.3d 513, 728 N.E.2d 342 (2000), the Supreme Court of Ohio addressed whether a reporting statute requiring the offender to provide a current home address, the name and address of the offender's employer, a photograph, and any other information required by the Federal Bureau of Investigation, violated privacy rights under § 1, Art. I of Ohio's Constitution.[6] The court determined that § 1, Art. I, was "a statement of fundamental ideals upon which a limited government is created." *Id.* at 354. As such, it was not a self-executing provision but rather required enacting provisions to indicate how these rights are subject to judicial enforcement. *Id.* It further noted that even if § 1, Art. I, was self-executing, the legislation would be upheld since the registration requirements were reasonable legislation addressing legitimate governmental interests without a detrimental effect to individual constitutional rights. *Id.* at 355. Since privacy rights under Ohio's § 1, Art. I, run parallel

to those guaranteed by the Fourteenth Amendment to the U.S. Constitution, the rights were deemed not to be absolute and would instead yield when required by public necessity. *Id.* at 355–56. Finding that the information at issue was public record, the court found no infringement of an offender's right to privacy. *Id.* at 356. It likewise found no infringement of an offender's right to acquire and possess property, right to pursue an occupation, nor right to a favorable reputation. *Id.* at 356–57.

With language virtually identical to the Ohio Constitution, the California Constitution provides that "[a]ll people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Cal. Const. art. I, § 1. California courts have determined that these rights are not absolute and will yield when demanded by the public welfare and common good. *See Nat'l Org. for the Reform of Marijuana Laws v. Gain*, 100 Cal.App.3d 586, 161 Cal. Rptr. 181, 187 (1979); *In re Moffett*, 19 Cal.App.2d 7, 64 P.2d 1190, 1194 (1937).

A similar provision of the New Mexico Constitution provides that "all persons are born equally free, and have certain natu-

---

WE DECLARE, that all people are created equal; that they are endowed by their CREATOR with certain inalienable rights; that among these are life, liberty, and the pursuit of happiness; that all power is inherent in the people; and that all free governments are, and of right ought to be, founded on their authority, and instituted for their peace, safety, and well-being. For the advancement of these ends, the people have at all times, an indefeasible right to alter and reform their government.
Ind. Const. art. I, § 1.

**5.** We have rarely addressed Art. I, § 1, at all but at least two cases have done so. *See Dep't of Fin. Insts. v. Holt*, 231 Ind. 293, 301–02, 108 N.E.2d 629, 633–34 (Ind.1952); *Kirtley v. State*, 227 Ind. 175, 181–83, 84 N.E.2d 712, 714–15 (Ind.1949).

**6.** The constitutional provision in question provided that "all men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and seeking and obtaining happiness and safety." Ohio Const. § 1, Art. I.

ral, inherent and inalienable rights, among which are the rights of enjoying and defending life and liberty, of acquiring, possessing and protecting property, and of seeking and obtaining safety and happiness." N.M. Const. art. II, § 4. New Mexico courts have determined that although its citizens enjoy rights to life, liberty, property, and happiness, Art. II, § 4, merely makes vague references to these rights and enabling legislation is required before judicial enforcement of these rights is warranted. *See e.g., Blea v. City of Espanola*, 117 N.M. 217, 870 P.2d 755, 759 (N.M.Ct.App.1994), *cert. denied*, 117 N.M. 328, 871 P.2d 984 (N.M.1994).

Similarly, Chapter I, Art. I, of the Vermont Constitution provides that "all men are born equally free and independent, and have certain natural, inherent, and unalienable rights, amongst which are the enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing and obtaining happiness and safety." The Supreme Court of Vermont has determined that this provision does not create enforceable rights, but rather "expresses fundamental, general principles ... that infuse the rights of individuals and powers of government specified elsewhere in the constitution." *Shields v. Gerhart*, 163 Vt. 219, 658 A.2d 924, 928 (1995). The Supreme Court of Vermont has never declared a statute unconstitutional solely because it violated Chapter I, Art. I of the Vermont Constitution. *See Benning v. State*, 161 Vt. 472, 641 A.2d 757, 759 (1994); *see also State v. Carruth*, 85 Vt. 271, 81 A. 922, 923 (1911) ("Many things contained in the bill of rights found in our State Constitution 'are not, and from the very nature of the case cannot be, so certain and definite in character as to form

rules for judicial decisions; and they are declared rather as guides to the legislative judgment than as marking an absolute limitation of power.'") (citations omitted).

Other states also have construed constitutional provisions similar in wording to Art. I, § 1, of the Indiana Constitution not to provide a sole basis for challenging legislation since the language is not so complete as to provide courts with a standard that could be routinely and uniformly applied. *See e.g., Sheppard v. Dowling*, 127 Ala. 1, 28 So. 791, 795 (1899); *Cogan v. State Dep't of Revenue*, 657 P.2d 396, 398 (Alaska 1983); *Nelson v. Boundary County*, 109 Idaho 205, 706 P.2d 94, 100 (Idaho Ct.App.1985); *Atteberry v. State*, 84 Nev. 213, 438 P.2d 789, 791 (1968) (challenging the constitutionality of a registry of convicted persons, which required disclosure of the convicted person's name; detailed physical description; crime committed; name under which convicted; details of sentence served; address; type of structure (apartment, hotel, etc.); length of time in residence there; etc.); *Sepe v. Daneker*, 76 R.I. 160, 68 A.2d 101, 105 (1949).

We need not decide whether Art. I, § 1, presents any justiciable issues here because Doe does not press a substantive claim. Rather, he says the question is "whether the former offenders have a privacy interest in the government not disclosing personal information about them and notifying the world that they are dangerous sex offenders, without first affording them the opportunity to demonstrate that they are not." (Appellants' Reply Br. at 12.)[7] This procedural claim is precisely the issue analyzed above in part I. For the same reasons why Doe has no right to a dangerousness hearing under Art. I, § 23,

---

7. *Cf. Connecticut Dep't of Pub. Safety,* —— U.S. at ——, 123 S.Ct. at 1165 ("[R]espondent expressly disavows any reliance on the sub-

stantive component of the Fourteenth Amendment's protections.").

he also has no right to such a hearing under Art. I, § 1.

### Conclusion

Having previously granted transfer pursuant to Indiana Appellate Rule 56(A), we now dissolve the stay previously entered in this matter and affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.