760 P.2d 1137

Frederick A. DEONIER, Plaintiff–Appellant, Cross Respondent,

v.

STATE of Idaho, PUBLIC EMPLOYEE RETIREMENT BOARD, Defendant–Respondent, Cross Appellant.

William H. KELLER, Plaintiff–Appellant, Cross Respondent,

v.

STATE of Idaho, PUBLIC EMPLOYEE RETIREMENT BOARD, Defendant–Respondent, Cross Appellant.

No. 16706.

Supreme Court of Idaho.

June 17, 1988.

Rehearing Denied Sept. 21, 1988.

**722**

Skinner, Fawcett & Mauk, Boise, for plaintiffs-appellants, cross respondents. William L. Mauk and Alan C. Herzfeld argued.

Jim Jones, Atty. Gen., and David G. High, Deputy Atty. Gen., Boise, for defendant-respondent, cross appellant. David G. High argued.

HUNTLEY, Justice.

This is a consolidated appeal from a decision of the Industrial Commission which upheld two closely related orders of the Public Employees Retirement Board (PERS Board). The appellants, Frederick Deonier and William Keller, were formerly employed by the Boise City Fire Department —Deonier from 1947 through 1981, and Keller from 1975 through 1982. Both men were injured on the job and negotiated lump sum monetary settlements of their worker's compensation claims. Prior to their involuntary retirements, Deonier had contributed $18,121.69 to the Firemen's Retirement Fund, and Keller had contributed $9,688.12. (Neither amount includes interest accrued thereon.) Subsequently, Deonier and Keller sought disability retirement benefits. The PERS Board granted the disability retirement benefits, but ordered, pursuant to I.C. § 72–1414, that the disability retirement benefits must be offset by the amount of the lump sum worker's compensation benefits which they had previously received.

Both firemen appealed the PERS Board's decision to the Industrial Commission pursuant to I.C. § 72–1423. The appeals were consolidated by the Commission because of the similarity of the legal issues. The Commission entered a final decision on appeal on September 29, 1986, affirming the setoff, but reducing the amount thereof. The primary issues raised by this appeal involve the legal interpretation of I.C. § 72–1414 by the PERS Board and the Commission, and the constitutionality of I.C. § 72–1414. We hold that, irrespective of constitutional infirmities, the interpretation of § 72–1414 by the Board and the Commission is erroneous. We then hold § 72–1414 unconstitutional as an impairment of the right to contract and as a violation of equal protection of the law.

The legislation instituting the Firemen's Retirement Fund (FRF) was enacted in 1945. See, I.C. § 72–1401 *et seq.* As originally enacted, § 14 of the Act (I.C. § 72–1414) provided that the amount of payments payable under the FRF "shall be reduced by the amount to which said paid fireman is entitled under the said Workman's Compensation Law." [1]

1. I.C. § 72–1414(B) provided: "Any paid fireman incapacitated by injury in the course of duty, or by illness attributable wholly or partially to service as a paid fireman, shall be retired so long as such disability shall continue in a degree which prevents efficient service, and during such disability shall be paid from the said fund a monthly sum of Sixty-five Dollars: provided, however, that if any such paid fireman is entitled to receive compensation under the Workmen's Compensation Law of the State of Idaho as it now exists, or shall hereafter be amended, the amount payable under this Act shall be reduced by the amount to which said paid firemen is entitled under the Workmen's Compensation Law."

I.C. § 72–1414(C) provided: "In event a paid fireman is killed or sustains injury, from which death results, while in performance of his duty, and leaves surviving him a widow, his widow shall, during the time she remains his widow and does not remarry, be paid from the said fund the monthly sum of Sixty-five Dollars; in event the widow of a fireman so killed, or whose death so results, shall remarry and there shall be, at the time of such remarriage, his minor child or minor children of deceased under the age of eighteen years, the payments aforesaid shall be paid to the widow, notwithstanding such remarriage, but for the sole benefit of such minor child or children under and until reaching the age of eighteen years: provided, however, that any sums payable to any widow or minor child or children of any fireman under this Act shall be reduced by any sum to which such widow or minor child or children may be entitled under the provisions of the Workmen's Compensation Law of the State of Idaho."

I.C. § 72–1414 has been restructured since 1945, but continues to provide for a setoff for worker's compensation benefits paid, albeit in different subsections of the statute.[2]

## INTERPRETATION OF IDAHO CODE, TITLE 72

On its face, I.C. § 72–1414 operates to decrease the amount of disability retirement benefits received by employees by the amount of worker's compensation benefits they are entitled to receive. It is difficult to reconcile the provisions of I.C. § 72–1414 with I.C. § 72–318, which provides in pertinent part:

> **Invalid agreements—penalty.**—(1) No agreement by an employee to pay any portion of the premiums paid by his employer for workmen's compensation, *or to contribute to the cost* or other security maintained for or carried for the purpose of securing the payment of workmen's compensation, or to contribute to a benefit fund or department maintained by the employer, or any contract, rule, regulation or device whatever design to relieve the employer in whole or in part from any liability created by this law, shall be valid. ... (Emphasis added).

In *Shill v. Shill*, 100 Idaho 433, 599 P.2d 1004 (1979), we commented upon the nature of retirement benefits received pursuant to the Idaho Firemen's Retirement Fund.

The State of Idaho Firemen's Retirement Fund establishes a pension plan funded by contributions from each paid fireman deducted from the fireman's wages or salary. Other revenues are also added to the fund. ... A firefighter's interest in the pension fund attributable to fund income from sources other than employee contributions *is not a gratuity but a form of deferred compensation* accrued by reason of the individual's service ... (Emphasis added).

100 Idaho at 436, 599 P.2d at 1007.

Under like circumstances, the court in *Symington v. City of Albany*, 5 Cal.3d 23, 95 Cal.Rptr. 206, 485 P.2d 270 (1971), held that a city could not reduce the pension of a disabled fireman by the amount of workmen's compensation the fireman had received, where Ca. Labor Code § 3751 provided that "[n]o employer shall exact or receive from any employee any contribution, or make or take any deduction from earnings of any employee, either directly or indirectly, to cover ... any part of the cost of [worker's] compensation...."

In *Symington*, the city contributed an amount equal to employees' contributions to the fund. The court allowed an offset of one-half of the worker's compensation benefits received from the pension proportional to the city's contribution to the pension fund. The court noted that to hold otherwise would "deprive [the fireman] of the benefit of his many years of contributions to the pension system and compel him, in violation of Labor Code section 3751, to pay indirectly for his own workmen's compensation benefits." 95 Cal.Rptr. at 207, 485 P.2d at 271.

While the California court opted for a partial offset to avoid violating Ca. Labor Code § 3751, we are not bound to accept their rationale in its entirety. *Shill* establishes that retirement benefits under the FRF are deferred compensation or wages. Requiring a firefighter to contribute to the cost of his own worker's compensation benefits solely from his own contribution to his retirement fund violates the mandate of

---

**2.** In 1975, I.C. § 72–1414(B) provided: "Any paid fireman incapacitated by injury in the course of duty, or by illness attributable wholly or partially to service as a paid fireman, shall be retired so long as such disability shall continue in a degree which prevents efficient service, and during such disability shall be paid from the said fund a monthly sum of Ninety-five Dollars ($95.00): provided, however, that if any such paid fireman is entitled to receive compensation under the Workmen's Compensation Law of the State of Idaho as it now exists, or shall hereafter be amended, the amount payable under this Act shall be reduced by the amount to which said paid fireman is entitled under said Workmen's Compensation Law."

I.C. § 72–1414(G) provided: "Any fireman, widow, child or children of a fireman entitled to compensation under the Workmen's Compensation Law, shall draw benefits under this Act only to the extent that the benefits under this Act exceed those to which he shall be entitled under the Workmen's Compensation Law of Idaho."

I.C. § 72–318 and undercuts a firefighter's right to rely upon the benefits earned over a lifetime of work. However, even allowing a partial offset for those funds contributed to the Fund by the city would also deprive firemen of their own delayed wages. During wage negotiations, increases in retirement contributions by the city are often sought in lieu of increases in regular wages. The firefighter *earns* both payments from the city and is entitled to both. Further, one of the purposes underlying the enactment of the FRF as codified in § 72–1401 is the encouragement of long service in fire fighting. The State's reading of I.C. § 72–1414 actively retards that worthy goal by encouraging firefighters to serve less time and risk less injury in order to preserve the full value of their own delayed wages.[3]

Importantly, allowing no offset comports with the mandate of I.C. § 72–1420, that "provisions of this chapter shall be liberally construed, with the *object of promotion of justice and the welfare of the person subject to its provisions*" (emphasis added), by not unjustly depriving retired firemen of a pension they have already earned.

It should be noted that the commission relied heavily upon Larson's Treatise on Workmen's Compensation in upholding the total offset. In particular, the commission focused upon the following language:

> Wage-loss legislation is designed to restore to the worker a portion, such as one-half to two-thirds, of wages lost due to the three major causes of wage-loss: physical disability, economic unemployment, and old age. The crucial operative fact is that of wage-loss; the cause of the wage-loss merely dictates the category of legislation applicable. Now if a workman undergoes a period of wage loss due to all three conditions, it does not follow that he should receive three sets of benefits simultaneously *and thereby recover more than his actual wage.* He is experiencing only one wage loss and, in any logical system, should receive only one wage-loss benefit. This conclusion is inevitable, once it is recognized that workmen's compensation, unemployment compensation, non-occupational sickness and disability insurance, and old age and survivors' insurance are all parts of a system based upon a common principle. (Emphasis added).

4 Larson, The Law of Workmen's Compensation, § 97.10 (1971).

We cannot support any use of the above language from Larson to support the total offsetting of worker's compensation benefits received from retirement benefits to which one is entitled. The language highlighted in the above quotation indicates that, under no circumstances, should a retired employee recover "more than his actual wage." However, the central theme found in our statutes and case law is that retirement benefits *are* "wages." Further, plaintiffs in this case have argued that, under no circumstance, could any retired firefighter receive more than one hundred percent of his wage pursuant to Idaho's Worker's Compensation Laws and the retirement benefits of the FRF, irrespective of any offsetting.[4] The State has not disputed this assertion.

Additionally, even if a worker's deferred wages, when coupled with monies received as worker's compensation, total more than one-hundred percent of previous wages, such should not cut into the employee's

---

**3.** We wish to comment upon the Industrial Commission's commentary following its rejection of *Symington,* noting that "by reducing the pension benefits by the amount of workmen's compensation benefits, the cost to the pension fund is reduced which may, depending upon how it is implemented, reduce the size of the contributions the fund requires from firemen." In addition to being an entirely speculative mode of analysis, the commission appears to be implicitly advocating a system where "less is more"—where a reduction in the size of contributions and a concommitant reduction in the size of the benefit fund is a worthy goal. Such commentary demonstrates a complete lack of understanding of both the purposes of retirement funds and the sources of the monies deposited therein, and undermines the legislature's stated intent of providing retirement benefits to firefighters.

**4.** Indeed, under the statutory scheme, no firefighter subject to the FRF can receive more than sixty-five percent of his last average monthly salary as retirement benefits.

right to his retirement benefits, since worker's compensation awards are received for discrete independent injuries—not as wages.

Both Larson, in the foregoing quote, and the Commission, in relying upon it, misperceive the true nature of the bulk of worker's compensation benefits when they reason that a worker may not recover *"two or three sets of WAGE–LOSS benefits."* When a worker receives a permanent partial disability payment for loss of his leg at the hip, he is *not* receiving *wages*—he is being paid for loss of the leg. If, for example, the computer operator who lost a leg is rated for impairment when his condition stabilizes and he immediately returns to work at full pay, he nevertheless receives the permanent partial disability payments (either periodically or in a lump sum), not to replace *wages*, but as *compensation for loss of the leg.* Thus, the Commission, in utilizing Larson's multiple wage-loss recovery theory, fails to recognize the true nature of the compensation payments.

In attempting to construe Title 72 in a manner which gives the maximum effect possible to *all* of its code sections, we must reverse the Commission, holding that the reasonable interpretation of I.C. § 72–1414 does not allow for any offsetting of worker's compensation benefits from monies earned as deferred wages. We next consider whether the application of any offsetting would be constitutional as applied to the firemen under Idaho's FRF.

## IMPAIRMENT OF CONTRACT

█ In 1980, the legislature merged the Firemen's Retirement Fund into the Public Employment Retirement System (PERS). Thereafter, all firefighters employed after October 1, 1980, received retirement benefits through PERS, while firefighters who were employed prior to that time and were members of FRF remained so. At that time, I.C. § 59–1356 provided:

> **Benefits payable.**—The combined rights and benefits of paid firemen who were employed prior to October 1, 1980, shall not be less than the rights and benefits they would have received from the firemen's retirement fund, had the fund not been integrated with the employee system.

At the time of the enactment of I.C. § 59–1356, the legislature was operating within a context where *all* prior known cases in which I.C. § 72–1414 and § 72–1429P (now repealed) could have been applied by the State Insurance Fund, were these where the Fund did not offset worker's compensation benefits received from FRF benefits allowed. Indeed, the State can point to *no cases* where the offset provisions of I.C. § 72–1414 or § 72–1429P (now repealed) were ever applied. The legislature must be presumed to have acted with at least some knowledge of this continuous and unequivocal administrative treatment of I.C. § 72–1414.[5] Had the legislature wished to emphasize the setoff provisions of I.C. § 72–1414 and § 72–1429P (now repealed), they easily could have done so in 1980 when it redrafted many of the FRF provisions. Instead, in 1980 the legislature repealed I.C. § 72–1429P.[6]

As we have already seen, I.C. § 72–1414, despite its apparently clear wording, does not require offsetting should one also wish to give vitality to, and effectuate the purposes of, the other provisions of Title 72. In short, the State Insurance Fund could have been compelled to reject applying the setoff (as it chose to do in *all* cases prior to 1980) by its reading of Title 72 in its entirety. At any rate, a clear pattern of administrative action by the State Insurance Fund

---

5. Indeed, the record contains evidence of a legal opinion advising the State Insurance Fund issued by a Boise attorney, identifying the three cases in which offset provisions were not applied to lump sum settlement agreements.

6. I.C. § 72–1429(P) was substantially similar to I.C. § 72–1414 and read:

**Workmen's Compensation Credit.**—Any fireman, widow, child or children of a fireman entitled to compensation under the Workman's Compensation Law, shall draw benefits under this Act only to the extent that the benefits under this Act exceed those to which he shall be entitled under the Workmen's Compensation Law of Idaho.

was established. Prior to 1980, then, retired firemen could rely upon the fact that the State Insurance Fund would not interpret § 72–1414 as requiring a setoff in cases of lump sum settlement agreements. Further, as already stated, I.C. § 59–1356 enjoins the diminution of firefighter's rights received from the Firemen's Retirement Fund subsequent to the merger with the PERS. Additionally, rights under pension plans are vested:

> This court has adopted the rule 'the rights of the employees in pension plans such as Idaho's Retirement Fund Act are vested, subject only to reasonable modification for the purpose of keeping the pension system flexible and maintaining its integrity.'

*Lynn v. Kootenai County Fire Protective Dist. #1*, 97 Idaho 623, 627, 550 P.2d 126, 130 (1976) (quoting from *Hanson v. City of Idaho Falls*, 92 Idaho 512, 514, 446 P.2d 634, 636 (1968)). The new administrative interpretation of I.C. § 72–1414 does, then, materially alter the vested rights of firefighters subject to the FRF.

While no case we have found directly addresses a situation where an administrative agency unilaterally alters its previously developed policy to lessen a public employee's right to receive benefits, our holding in *Nash v. Boise City Fire Department*, 104 Idaho 803, 663 P.2d 1105 (1983), remains instructive. In *Nash*, we held that a 1978 legislative amendment, limiting to three percent the cost of living adjustment to firemen's retirement pensions, could not be applied to a firefighter retiring after the effective date of the amendment who had earned benefits by virtue of service prior to that date, as his rights were vested and the fund was not insolvent. In so holding, we characterized retirement plans in "contract" terms, while noting that strict definitions of retirement plans as either "gratuities" or "contracts" were not meaningful. Ultimately, we cited to *Engen v. James*, 92 Idaho 690, 693, 448 P.2d 977, 980 (1969), wherein we held that the legislature could not take away vested retirement rights of a Coeur d'Alene policeman, stating that "[t]his follows from the compensatory nature of pension plans...." *id.* 104 Idaho

at 806, 663 P.2d at 1108, quoting from *Engen, supra.* We then adopted the analysis in *Betts v. Board of Administration of Public Employee's Retirement System*, 21 Cal.3d 859, 148 Cal.Rptr. 158, 582 P.2d 614 (1978), which determined that subsequent legislative modifications of retirement systems may be sustained where "reasonable," and that "[t]o be sustained as reasonable, alterations of employees' pension rights must bear some material relation to the theory of a pension system and its successful operation...." 104 Idaho at 807, 663 P.2d at 1109, quoting from *Betts*, 148 Cal.Rptr. at 161, 582 P.2d at 617. We then held that the three percent "cap" for cost of living adjustments to the pension plan was not reasonable, as the FRF was neither insolvent nor unable to meet its financial obligations either then or in the near future. Accordingly, the "cap" unreasonably impaired vested rights of public employees and could not be sustained. See also, *State of Montana v. Fire Department Relief Association, etc.*, 138 Mont. 172, 355 P.2d 670 (1960), wherein the court held that the portion of a statute providing for payment of disability pensions by the fire department relief association to members, which stated that no member of the association shall be entitled to receive a disability pension while also receiving an allowance or award under Montana Workmen's Compensation Act was an unconstitutional impairment of contract. See also, *Sheffield v. Alaska Public Employees' Association*, 732 P.2d 1083 (Alaska 1987).

In the instant case, it is not a subsequent legislative modification which has impinged upon vested rights, but a new administrative interpretation of an extant statute which was subsequently merged into a different retirement system. In any event, the result for the retired person is the same. The nature of the retirement benefit as a contract—a method of deferred compensation—remains the same regardless of which state entity has interpreted I.C. § 72–1414.

Plaintiffs Deonier and Keller were entitled to rely upon the State Insurance

Fund's prior interpretation of § 72–1414 (i.e., not applying any offset pursuant thereto), and the administrative alteration of such interpretation materially altered their contractual expectations regarding their vested right to receive their retirement benefits through the FRF.

## EQUAL PROTECTION

■ We have previously stated the various standards for equal protection review in other cases interpreting provisions of the FRF:

> Like all statutorily created classifications, the classifications created by Title 72, Chapter 14, must satisfy the equal protection requirements of the Fourteenth Amendment. If a classification does not involve a fundamental right such as the right to vote or if a classification has not been drawn upon traditionally suspect lines such as race, the Supreme Court of the United States has held that the classification does not offend the Fourteenth Amendment if the classification bears a rational or reasonable relationship to the purposes for which the statute was enacted. (Citations omitted).

*Lynn, supra,* 97 Idaho at 625–26, 550 P.2d at 128–29.

While utilizing the "rational basis" standard in *Lynn,* we also recognized and utilized the intermediate "means-focus" standard in *Jones v. State Board of Medicine,* 97 Idaho 859, 867, 555 P.2d 399, 407 (1976):

> This new intermediate standard of equal protection review has been described as "means-focus" because it tests whether the legislative means substantially furthers some specifically identifiable legislative end.

*Id.* at 867, 555 P.2d at 407.

> A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike."

*Id.* quoting from *Reed v. Reed,* 404 U.S. 71, 75–76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971).

Utilizing either the "rational basis" or the "means-focus" standards of review, I.C. § 72–1414 fails to pass constitutional muster. First, I.C. § 72–1414 sets forth an arbitrary classification, since it burdens only those firefighters who are members of the FRF and are subject to involuntarily retirement because of injuries resulting in the award of worker's compensation benefits. I.C. § 72–1414 classifies both on the basis of involuntary retirement versus voluntary retirement, and membership in the FRF versus the PERS system. Further, the classification is arbitrary as between the firefighter injured early in his career, who ultimately receives 100% of both his worker's compensation and retirement, and the firefighter injured shortly before retirement who suffers the reduction. Under either of the three instances, the classification is arbitrary and unrelated to furthering a specifically identifiable legislative end.

I.C. § 72–1401 lists the purposes of the FRF as follows:

> **Purpose of Act.**—The retirement, with continuance of pay for themselves, provision for dependents, and pay during temporary disability, and the encouragement of long service in firefighting service, of paid firemen becoming aged or disabled in the service of the state or any of its cities or fire districts, is hereby declared to be a public purpose of joint concern to the state and each of its cities and fire districts in the protection and conservation of property and lives and essential to the maintenance of competent and efficient personnel in fire service....

I.C. § 72–1414 is certainly not tailored to further the ends of I.C. § 72–1401. Instead, when read in the manner sought by the State, it distinguishes between those who are forced into involuntary retirement due to disabling on-the-job injuries (and resultant worker's compensation claims) and those who are fortunate enough to retire on a voluntary basis. I.C. § 72–1429Q provides that, for those firemen retiring voluntarily and not qualifying for benefits under any other provision of the chapter, such fireman "shall be entitled to receive at the

time of said termination one hundred percent (100%) of whatever sums he has contributed to the retirement account...." Likewise, employees who receive retirement benefits through PERS can rely both upon receipt of social security benefits and upon I.C. § 59–1320(2), which at least limits offsetting.

As already mentioned, it is hard to imagine how I.C. § 72–1414 could possibly further the stated legislative purpose of encouraging long-term service as a firefighter when, with each day worked, a firefighter increases the risk that he or she will be forced to take an involuntary retirement due to an on-the-job injury and will not only by physically impaired, but will also suffer the loss of a portion of his or her own deferred salary to pay for his or her own worker's compensation benefits. Further, the State has presented no cogent reason for distinguishing between treatment of voluntary and involuntary firefighting retirees, nor has it presented any valid reason for the difference in treatment as between members of FRF and PERS. In *Lynn v. Kootenai County Fire Protective Dist. # 1, supra,* we struck down as violative of equal protection another portion of Title 72, chapter 1400—namely, a 1973 amendment to I.C. § 72–1429F, which resulted in firefighters with less service receiving more benefits than firefighters who were incapacitated after twenty-one or more years of service. We noted that:

> The primary purpose of the legislature in enacting these amendments was to increase the retirement benefits for firemen who retired either voluntarily or non-voluntarily; however, as applied to Lynn, these amendments operated to diminish his benefits. The 1973 amendment to I.C. § 72–1429F (citation omitted) must be declared to be unconstitutional as this classification violates the Fourteenth Amendment to the Constitution of the United States.

*Id.* 97 Idaho at 626, 550 P.2d at 129.

As in *Lynn,* the classification found in I.C. § 72–1414 fails under either the "rational basis" test or the "means-focus" analysis. It furthers neither purpose enunciated in I.C. § 72–1401 and, if we assume for the sake of argument that its purpose could be to strengthen the financial position of the FRF, there should at least be some evidence of FRF insolvency; there is none.

Finally, we must address our opinion in *Brock v. City of Boise,* 95 Idaho 630, 516 P.2d 189 (1973). In *Brock,* we upheld the constitutionality of I.C. § 72–1429P (now repealed), which also operated to limit benefits under the Firemen's Retirement Fund Act to the extent they exceed those to which the recipient is entitled under the Worker's Compensation Law. The majority opinion in that case relied extensively upon the Larson Treatise, again apparently in the mistaken belief that I.C. § 72–1429P operated only to prevent a "double recovery" to retirees. The dissent by Chief Justice Donaldson persuasively argued that I.C. § 72–1429P did deny firefighters who entered into agreements whereby they received periodic worker's compensation benefits their right to equal protection of the laws, as § 72–1429P did not also require an offset against retirement benefits for lump sum worker's compensation payments previously received. We find the dissent persuasive and also note that the dissent implicitly recognizes that it was, at that time, the longstanding practice that lump sum worker's compensation benefits were not offset from retirement benefits. (See, discussion of impairment of contract, supra.)

In view of our holding that the offset provisions of I.C. § 72–1414 are unconstitutional, we note that Title 72, chapter 14 of the Idaho Code does provide for severability pursuant to I.C. § 72–1426:

> **Separability.**—If any clause, section or provision of this chapter be found to be unconstitutional, the remainder of this chapter shall remain in full force and effect, notwithstanding such invalidity.

The remainder of Title 72, chapter 14 is unaffected by our holding.

## THE CROSS–APPEAL

The State asserts that since permanent partial disability benefits are "income benefits" within the meaning of the Idaho

Worker's Compensation statutes, the retirement board should attribute the receipt of same to periods of actual wage loss for purposes of offsetting pursuant to I.C. § 72–1414. In view of our holding that the offset provisions of I.C. § 72–1414 are inoperative as violative of equal protection of the law and contractual rights, the issue on cross-appeal is moot.

Reversed and remanded for proceedings consistent herewith. Costs to appellants, no attorney fees awarded.

BISTLINE, J., concurs.

SHEPARD, C.J., concurs in the result.

DONALDSON, J., sat but did not participate due to his untimely death.

BAKES, Justice, dissenting:

The Court's decision today spurns our controlling decision in *Brock v. City of Boise*, 95 Idaho 630, 516 P.2d 189 (1973). The plurality opinion even attempts to overrule the *Brock* case. However, the precedents of this Court cannot be overruled by a two-judge plurality opinion.[1] Nor can a two-judge plurality opinion render an authoritative interpretation of I.C. § 72–1414, which is binding on the lower courts and administrative agencies. The most that can be said of the Court's action today is that these claimants have prevailed, and they are going to receive additional benefits, *i.e.*, the double benefits that I.C. § 72–1414 and our prior decision in *Brock v. City of Boise, supra*, specifically provide that they should not receive. In view of the untimely death of Justice Donaldson, it would be better policy for the Court to schedule the case for reargument and let a full five-member Court decide this important case.

The retirement policy set by the Idaho legislature, as expressed in I.C. § 72–1414, which the Court today rejects by its judgment reversing the Industrial Commission, has been in place for over 40 years and was tested and approved by this Court 15 years ago and held to be constitutional in *Brock v. City of Boise, supra*. If there is any area of law which requires stability, it is the law relating to retirement and disability programs which create benefits and incur obligations which extend for decades. Therefore, this Court should not lightly reject its own long accepted precedents and the clearly expressed policies of the legislature which have been in place for decades. Retirement and disability programs must have the requisite stability in order that those retirement funds remain solvent over the lifetime of those participating in the retirement systems. Protection of the potential retirees in those systems, here the firemen, requires that the legislature's precisely tuned balance between contributions to the system, and obligations created under it, are not altered judicially to satisfy the social notions of the judges. The plurality opinion ignores this fine legislative balance, in effect repealing the provisions of I.C. § 72–1414 as it relates to these claimants. The confusion which today's decision will spawn in public retirement systems could ultimately result in long range detriment to all public employee retirees. For the following reasons, I dissent.

The resolution of the legal issues raised by this appeal involves the interpretation of

1. *Texas v. Brown*, 460 U.S. 730, 737, 103 S.Ct. 1535, 1541, 75 L.Ed.2d 502 (1983) (holding a plurality opinion of the U.S. Supreme Court is not binding precedent); *see Roofing Wholesale Co., Inc. v. Palmer*, 108 Ariz. 508, 502 P.2d 1327, 1331 (1972) (holding that before we are required to declare unconstitutional statutes enacted by the legislature it is not unreasonable to ask that the U.S. Supreme Court speak with at least a majority voice on the subject); *North v. Superior Court*, 8 Cal.3d 301, 104 Cal.Rptr. 833, 836, 502 P.2d 1305, 1308 (1972); *People v. Miller*, 196 Cal.App.3d 846, 242 Cal.Rptr. 179, 181 (6th Dist.1987) (holding that statements in plurality opinions are not binding precedent); *People v. Harris*, 71 Cal.App.3d 959, 139 Cal.Rptr. 778, 783 (5th Dist.1977); *State v. Brackman*, 178 Mont. 105, 582 P.2d 1216, 1217 (1978) (holding a plurality opinion is not binding precedent); *Commonwealth v. Bracero*, 325 Pa.Super. 494, 473 A.2d 176 (1984); *Commonwealth v. Scott*, 279 Pa.Super. 8, 420 A.2d 717 (1980); *Taskett v. King Broadcasting Co.*, 86 Wash.2d 439, 546 P.2d 81 (1976). *See also* 20 Am.Jur.2d Courts § 189 (only judicial opinion of the majority of the court on a point of law can have a *stare decisis* effect); Annot., Binding Effect Upon State Courts of Opinion of United States Supreme Court Supported by Less Than a Majority of All Its Members, 65 A.L.R.3d 504 (1975).

I.C. § 72–1414 and its alleged unconstitutionality. The appellants, Frederick Deonier and William Keller, were formerly employed by the Boise City Fire Department. Both men were injured on the job. Each negotiated a lump sum monetary settlement of their worker's compensation claims and then each sought disability retirement benefits. The Public Employment Retirement System (PERS) board granted the disability retirement benefits, but, as required by I.C. § 72–1414, ordered that the disability retirement benefits be offset by the amount of the lump sum worker's compensation income benefits which they had previously received.[2] Both appellants appealed the PERS board's decision to the Industrial Commission. The Industrial Commission affirmed.

The legislation instituting the Firemen's Retirement Fund (FRF) was enacted in 1945. I.C. § 72–1401 et seq. As originally enacted, Section 14 of the act (I.C. § 72–1414) expressly provided that the amount of benefits payable under the FRF "shall be reduced by the amount to which said paid fireman is entitled under the said

workmen's compensation law." Thus, although unnoticed in the plurality opinion, from the time of original enactment, the FRF provided for a setoff from disability benefits of the amount of compensation received for disability under the workmen's compensation law. When the appellant Deonier entered into employment as a fireman in 1947, the foregoing statutory matrix, including the setoff of worker's compensation disability benefits from any benefits received under the FRF, became part of his contract of employment. *Nash v. City of Boise Fire Dept.*, 104 Idaho 803, 663 P.2d 1105 (1983); *Shill v. Shill*, 100 Idaho 433, 599 P.2d 1004 (1979).

Appellant Keller commenced work for the Boise City Fire Department in 1975. While I.C. § 72–1414 had been restructured after 1945, the same provisions which originally provided for a setoff for worker's compensation benefits paid continued in the law, albeit in different subsections of I.C. § 72–1414.[3] Additionally, another section, I.C. § 72–1429P, had been added in 1963, which reinforced the legislative intent man-

2. I.C. § 72–1414(B) provided: "Any paid fireman incapacitated by injury in the course of duty, or by illness attributable wholly or partially to service as a paid fireman, shall be retired so long as such disability shall continue in a degree which prevents efficient service, and during such disability shall be paid from the said fund a monthly sum of Sixty-five Dollars: *provided, however, that if any such paid fireman is entitled to receive compensation under the Workmen's Compensation Law of the State of Idaho as it now exists, or shall hereafter be amended, the amount payable under this Act shall be reduced by the amount to which said paid fireman is entitled under said Workmen's Compensation Law.*" (Emphasis added.)

I.C. § 72–1414(C) provided: "In event a paid fireman is killed or sustains injury, from which death results, while in performance of his duty, and leaves surviving him a widow, his widow shall, during the time she remains his widow and does not remarry, be paid from the said fund the monthly sum of Sixty-five Dollars; in event the widow of a fireman so killed, or whose death so results, shall remarry and there shall be, at the time of such remarriage, his minor child or minor children of deceased under the age of eighteen years, the payments aforesaid shall be paid to the widow, notwithstanding such remarriage, but for the sole benefit of such minor child or children under and until reaching the age of eighteen years: *provid-*

*ed, however, that any sums payable to any widow or minor child or children of any fireman under this Act shall be reduced by any sum to which such widow or minor child or children may be entitled under the provisions of the Workmen's Compensation Law of the State of Idaho.*" (Emphasis added.)

3. In 1975 I.C. § 71–1414(B) provided: "Any paid fireman incapacitated by injury in the course of duty, or by illness attributable wholly or partially to service as a paid fireman, shall be retired so long as such disability shall continue in a degree which prevents efficient service, and during such disability shall be paid from the said fund a monthly sum of ninety-five dollars: *provided, however, that if any such paid fireman is entitled to receive compensation under the Workmen's Compensation Law of the state of Idaho as it now exists, or shall hereafter be amended, the amount payable under this act shall be reduced by the amount to which said paid fireman is entitled under said Workmen's Compensation Law.*" (Emphasis added.)

I.C. § 72–1414(G) provided: "Any fireman, widow, child or children of a fireman entitled to compensation under the Workmen's Compensation Law, shall draw benefits under this act *only to the extent that the benefits under this act exceed those to which he shall be entitled under the Workmen's Compensation Law of Idaho.*" (Emphasis added.)

dating the setoff. I.C. § 72–1429P provided:

"**72–1429P. Workmen's compensation credit.**—Any fireman, widow, child or children of a fireman entitled to compensation under the Workmen's Compensation Law, shall draw benefits under this act only to the extent that the benefits under this act exceed those to which he shall be entitled under the Workmen's Compensation Law of Idaho."

Therefore, like appellant Deonier, when appellant Keller entered into employment as a fireman in 1975, the statutes, which became a part of his contract of employment, *Nash v. City of Boise Fire Department, supra,* also required that any benefits received from the FRF be reduced by the amount of worker's compensation benefits received.

In 1980 the legislature merged the FRF, which originally was part of the State Insurance Fund, into the state's Public Employees Retirement System. Prior to the time FRF was combined into PERS, three firemen had retired under essentially the same circumstances as the appellants and had received worker's compensation lump sum settlement agreements which apparently were not set off against their disability retirement benefits by the State Insurance Fund, despite the existence of the statutory setoff requirement in I.C. §§ 72–1414 and 72–1429P. This took place even though at the same time the State Insurance Fund was applying the statutory setoff to those who retired receiving periodic rather than lump sum worker's compensation benefits. However, after the merger of FRF and PERS, the PERS board required the statutory setoff provided in I.C.

§§ 72–1414 and 72–1429P to be asserted both against lump sum worker's compensation awards, including the awards here to appellants, as well as awards for periodic compensation.

On appeal the Industrial Commission upheld the PERS board's application of the statutory setoff, relying upon our prior decision in *Brock v. City of Boise*, 95 Idaho 630, 516 P.2d 189 (1973), which held that I.C. § 72–1414 expressly required the setoff, and further held that I.C. § 72–1414 was constitutional.[4]

I

In an attempt to justify the reversal of the Industrial Commission, the plurality opinion first struggles with the acknowledged fact that I.C. § 72–1414 is not ambiguous, and that "its apparently clear wording," *ante* at 725, 760 P.2d at 1141, requires that the amount of disability retirement compensation to which claimants are entitled under I.C. § 72–1401 *et seq.* must be reduced by the amount received from the claimants' lump sum worker's compensation awards. Nevertheless, the plurality opinion rejects that acknowledged "clear wording," finding it "difficult to reconcile the provisions of I.C. § 72–1414 with I.C. § 72–318." *Ante* at 723, 760 P.2d at 1139. However, even a casual review of those two sections discloses that they were enacted at different times, in different chapters of the Code, and apply to entirely different legislative programs, and therefore there is nothing to reconcile. I.C. § 72–1414 applies solely to disability retirement benefits. I.C. § 72–318 deals solely with worker's compensation matters.

---

**4.** The commission did find that the PERS board had erred when it found that the entire lump sum settlement agreement constituted a duplication of benefits under I.C. § 72–1414. The commission found that the permanent partial disability benefits received by the appellants were income benefits which began to accrue when their medical condition stabilized. Because the lump sum settlement agreement covered a brief period before the appellants' conditions stabilized and their disability benefits accrued, the commission reduced the amount of offset by an amount (approximately $400 for each man) that represented the period when there was no overlap between appellants' worker's compensation and permanent partial disability retirement claims.

The result reached in the plurality opinion avoids dealing with the cross appeal. The PERS board cross appealed the commission's finding that the permanent partial disability benefits are income benefits for the period beginning when a claimant's medical condition becomes stable. I agree with the commission that the permanent partial disability benefits should be allocated to the period beginning when the lump sum settlement agreement is approved.

Therefore, since they apply to entirely different compensation programs, there is really nothing to reconcile. The plurality's attempt to apply worker's compensation statutes to retirement programs merely because they both happen to be in Title 72 of the Code, violates the basic rule of statutory construction that statutes dealing with a specific legislative program, here retirement benefits, take precedence over general statutes or statutes dealing with some other subject matter. *Maxwell v. Cumberland Life Ins. Co.*, 113 Idaho 808, 814, 748 P.2d 392, 398 (1987) (it is a general rule of statutory construction that the specific statute prevails, modifying the general statute); *see also Mickelsen v. City of Rexburg*, 101 Idaho 305, 612 P.2d 542 (1980) (holding that under the general rule of statutory construction a more specific statute controls over a more general statute); *see also Owen v. Burcham*, 100 Idaho 441, 599 P.2d 1012 (1979). Furthermore, the plurality's failure to follow what even they acknowledge is the "clear wording" of I.C. § 72–1414 violates our prior decisions, such as *Worley Highway Dist. v. Kootenai County*, 98 Idaho 925, 928, 576 P.2d 206, 209 (1978) ("This Court has consistently adhered to the primary canon of statutory construction that where the language of the statute is unambiguous, the clear expressed intent of the legislature must be given effect and there is no occasion for construction."); *see also State v. Riley*, 83 Idaho 346, 349, 362 P.2d 1075, 1076–77 (1961).

Even if I.C. §§ 72–1414 and 72–318 applied to the same legislative program, our rules of statutory construction require us to construe the legislative enactments so as to give effect to both. *Maxwell v. Cumberland Life Ins. Co.*, 113 Idaho 808, 814, 748 P.2d 392, 398 (1987) (it is the first rule of statutory construction that statutes are to be interpreted, if possible, so as to give meaning to both and not to have one nullify the other); *see also State v. Creech*, 105 Idaho 362, 670 P.2d 463 (1983), *cert. denied* 465 U.S. 1051, 104 S.Ct. 1327, 79 L.Ed.2d 722 (1984); *North Idaho Jurisdiction of Episcopal Churches, Inc. v. Kootenai County*, 94 Idaho 644, 496 P.2d 105 (1972);

*Christensen v. West*, 92 Idaho 87, 437 P.2d 359 (1968). I.C. §§ 72–1414 and 72–318 can be easily construed to give effect to both. I.C. § 72–318 invalidates any agreement which an employer may extract from an employee to have the employee pay any portion of the premiums for worker's compensation. There is nothing in this case dealing with any such agreement. Nor is there any claim that these employees in fact paid any portion of their worker's compensation premium, or that their worker's compensation benefits were in any manner reduced. Each received all of his worker's compensation benefits in a lump sum and paid no part of the employer's premium. Accordingly, I.C. § 72–318 is not even implicated. What this case involves is the amount of disability retirement benefits to which these claimants are entitled under I.C. § 72–1401 *et seq.*, specifically I.C. § 72–1414. There is no conflict between I.C. § 72–1414 and I.C. § 72–318, and there is nothing to "reconcile." Both can be given their full effect in their respective legislative programs, since they apply to two entirely different bodies of law. The plurality opinion's assertion that it is a "reasonable interpretation" of I.C. § 72–1414 to, in effect, ignore its unambiguously clear wording, totally rejects all accepted rules of statutory construction.

The plurality opinion's interpretation of I.C. § 72–1414 is not supported by the California case of *Symington v. City of Albany*, 5 Cal.3d 23, 95 Cal.Rptr. 206, 485 P.2d 270 (1971), as the opinion argues. In the *Symington* case there was *no* state statute comparable to I.C. § 72–1414, while there was a state statute comparable to 72–318. The California court held that the City of Albany's attempt to offset all of the amount of worker's compensation benefits from an employee's retirement disability benefits pursuant to its city charter was precluded and preempted by their state statute comparable to our 72–318. The California court held that "the compensation provisions of the Labor Code prevail when in conflict with the city charter provisions." However, the California court in that case was not faced with a state statute

such as I.C. § 72–1414 which specifically required such a setoff. Using the rationale of the California court in *Symington*, a state statute, such as I.C. § 72–1414, would be paramount and binding. Therefore, *Symington v. City of Albany, supra*, does not support the plurality's interpretation of I.C. § 72–1414 in this case. There was no such statute as I.C. § 72–1414 involved in the *Symington* case.[5]

The plurality opinion, by ignoring the acknowledged "clear wording" of I.C. § 72–1414 violates the most basic of our canons of statutory construction. However, based as it is on the expression of the views of only two justices of this Court, the plurality opinion is entitled to no precedential effect.[6]

## II

Given the plurality opinion's interpretation of I.C. § 72–1414, which in effect nullifies and repeals it, there should be no reason for the plurality opinion to further address any constitutional issues in this case. The prior decisions of this Court have clearly stated that when a case can be decided upon a ground other than a constitutional ground, the Court will not address the constitutional issues. *Poesy v. Bunney*, 98 Idaho 258, 561 P.2d 400 (1977) ("It is well established that a reviewing court will not pass on the constitutionality of a statute unless it is absolutely necessary for a determination of the case." *Citing Swensen v. Buildings, Inc.*, 93 Idaho 466, 463 P.2d 932 (1970)); *Nelson v. Boundary County*, 109 Idaho 205, 706 P.2d 94 (Ct.

App.1985) ("However, we will not review the constitutionality of a statute unless it is absolutely necessary to the decision of a case." *Citing Packard v. Joint School District No. 171*, 104 Idaho 604, 661 P.2d 770 (Ct.App.1983)); *State v. Hightower*, 101 Idaho 749, 757, 620 P.2d 783, 791 (1980). *Accord Nampa Christian Schools Foundation v. State*, 110 Idaho 918, 920, 719 P.2d 1178, 1180 (1986). In spite of the rulings from these cases, the plurality opinion nevertheless plunges ahead with its constitutional analysis of I.C. § 72–1414, which is an implied admission that its interpretation of I.C. § 72–1414 is erroneous and will convince no one.[7] Nevertheless, since the plurality opinion purports to determine the constitutionality of I.C. § 72–1414, a brief analysis of the plurality's reasoning will disclose the obvious error of its analysis.

### A.

Appellants and the plurality opinion first argue that I.C. § 72–1414, as applied by the PERS board, creates disparate, unequal treatment of firemen who receive lump sum settlements of their worker's compensation claims and, therefore, violates constitutional equal protection and due process guarantees. This allegation is based on the contention that the statute is somehow ambiguous because it has been administratively interpreted in a manner which creates disparate treatment between firemen. However, the statute's wording is not ambiguous, and it clearly requires the PERS

---

**5.** The California Supreme Court in the *Symington* case, even without a state statute such as I.C. § 72–1414, acknowledged the right of the city to reduce the disability retirement benefits by one-half of the worker's compensation benefits, which represented the city's share of the contributions to the retirement fund. The plurality opinion seemingly accepts the rationale of the *Symington* case, but rejects its result.

**6.** See the cases cited in n. 1, *infra*.

**7.** Throughout the plurality opinion there are many other statements of law which are totally unrelated to and unnecessary for a decision of today's case and thus are *obiter dicta*. No authority is cited for these statements, such as that at page 725, 760 P.2d at page 1141 declaring that "permanent partial disability payments (either

periodically or in lump sum) [are] not to replace wages, but [are] compensation for loss of leg"; and the statement at page 725, 760 P.2d at page 1141 that "the legislature must be presumed to have acted with at least some knowledge of this continuous and unequivocal administrative treatment of I.C. § 72–1414"; and the statement at pages 726–727, 760 P.2d pages 1142–1143 that a new administrative interpretation of an extant statute impinges upon vested rights resulting from a prior administrative interpretation. No authority is cited for any of these novel positions of law. Indeed, these statements are contrary either to the Idaho statutes or the prior decisions of this Court. *See* Part III of the opinion.

board to apply a setoff of the amount of worker's compensation benefits which *any* claimant is entitled to under the Firemen's Retirement Fund Act.[8] Actually, it is the appellants' assertion that the statute does not apply to lump sum worker's compensation agreements, which creates disparate unequal treatment.

In *Brock v. City of Boise, supra,* this Court upheld both the interpretation and the constitutionality of the setoff provisions of I.C. §§ 72–1414 and 72–1429P. The Court in *Brock* held that worker's compensation, FRF disability, and unemployment compensation were all part of "an overall system of wage loss protection" and "that duplication of benefits from different parts of the system should not ordinarily be allowed." The Court in *Brock* acknowledged that the statutes were clear and unambiguous, and that the legislature intended that a disabled fireman not receive both disability income benefits under the worker's compensation law and disability income benefits under the FRF. The Court held that the setoff provisions (I.C. §§ 72–1414 and 72–1429P) "have a fair and substantial relation to the object of the workmen's compensation and firemen's retirement legislation," and therefore they were constitutional.

This Court's constitutional analysis in *Brock* is consistent with the United States Supreme Court's decision in *Richardson v. Belcher,* 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed. 2d 231 (1971), which held that a similar setoff for worker's compensation benefits in Social Security disability retirement cases was neither a violation of constitutional due process nor equal protection laws. In *Richardson,* Justice Stewart wrote that "[a] statutory classification in the area of social welfare is consistent with the Equal Protection clause of the Fourteenth Amendment if it is 'rationally based and free from invidious discrimination.'" 404 U.S. at 81, 92 S.Ct. at 257. The Court held that the congressional intent to avoid double payment of disability income benefits was rationally related to the purposes of the Social Security laws, *i.e.,* to prevent double recoveries in order to assure a fiscally sound program with the lowest possible contribution rate for all those who may need benefits. *Accord Boehm v. Indus. Comm'n,* 738 P.2d 804 (Colo.Ct.App.1987); *Estate of Baker,* 222 Kan. 127, 563 P.2d 431 (1977); *Patterson v. City of Baton Rouge,* 309 So.2d 306 (La.1975); *McClanathan v. Smith,* 186 Mont. 56, 606 P.2d 507 (1980). *See also Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981).

The Industrial Commission, in its equal protection analysis, upheld the constitutionality of I.C. § 72–1414, even applying the "means-focus" test which is a stricter standard than the traditional "rational basis" test approved by this Court and by the United States Supreme Court in analyzing this type of social legislation. We have previously clarified the different situations in which it is proper to apply the "means-focus" test, as opposed to either the "strict scrutiny" or the traditional "rational basis" test. *See General Telephone Co. v. Idaho Public Utilities Comm'n,* 109 Idaho 942, 712 P.2d 643 (1986), for a concise discussion of Idaho case law regarding the application of these constitutional tests. Furthermore, in *Leliefeld v. Johnson,* 104 Idaho 357, 659 P.2d 111 (1983), we held that the stricter "means-focus" standard is to be applied only when a two-part trigger has been satisfied. "The statute *must be discriminatory on its face* and there must be '*a patent indication of a lack of relationship between the classification and the declared purpose* of the statute....'" (Emphasis added.) 104 Idaho at 374, 659

---

8. As pointed out in footnotes 2 and 3, at the time each of the appellants entered into employment with Boise City, the statute required that "the amount payable under this act shall be reduced by the amount to which said paid fireman is entitled under said workmen's compensation law." I.C. § 72–1414 was amended in 1976 and 1980 and, as presently enacted, reads as follows:

"Any fireman, spouse, child or children of a fireman entitled to compensation under the Workmen's Compensation Law, shall draw benefits under this chapter [the Firemen's Retirement Fund Act] *only to the extent that the benefits under this chapter exceed those to which he or she shall be entitled under the Workmen's Compensation Law of Idaho.*" (Emphasis added.)

P.2d at 128. An examination of I.C. § 72–1414 demonstrates that (1) the statute is not discriminatory on its face because it applies to all firemen who are eligible for benefits (ironically, it is the plurality's decision in not applying the statute to lump sum settlements, such as appellants, which makes the statute discriminatory); and (2) there is no "patent indication of a lack of relationship between the classification and the declared purpose of the statute" because the setoff is directly related to providing all firemen with a sound retirement system. Thus, the level of scrutiny that this Court must apply in its analysis does not rise to the intermediate level of the means-focus test.[9]

While the Industrial Commission upheld the constitutionality of I.C. § 72–1414, even applying the "means-focus" test, the commission erred in employing that more demanding standard. This Court has never applied the "means-focus" test to social welfare legislation.

" '[I]n the areas of social welfare legislation, a restrained standard of review is applied. Such standard [known as the "rational basis" test] is set forth in *McGowan v. Maryland*, 366 U.S. 420, 425–426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961):

" ' "The constitutional safeguard [of equal protection] is offended only if the classification rests on grounds wholly irrelevant to the achievement of the state's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their law results in some inequality. A statutory discrimination will not be set aside if any statement of facts may be reasonably conceived to justify it." ' " *General Telephone Co. v. Idaho Public Util. Comm'n*, 109 Idaho 942, 946, 712 P.2d 643, 647 (1986).[10]

In this case the statute, I.C. § 72–1414, not only has a rational basis, it does *not* provide for unequal treatment and therefore the equal protection clause is not even applicable. It is the plurality opinion's action in excluding these lump sum worker's compensation settlements from the setoff requirements of I.C. § 72–1414, which creates the unequal treatment in this case. Even assuming that the statute created the distinction which the plurality's interpretation now creates, that would not necessarily constitute a violation of equal protection. The Supreme Court held in *Richardson v. Belcher, supra*, in requiring the setoff of worker's compensation benefits from Social Security disability retirement benefits, that the related legislative purposes of (1) avoiding duplicate benefits and (2) assuring a fiscally sound program with the lowest possible contribution rates, was a sufficient rational basis to satisfy the requirements of the equal protection clause. The correct equal protection analysis was set out by Justice Brennan of the United States Supreme Court in *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981), which this Court has approved and quoted from as follows:

" 'But States are not required to convince the courts of the correctness of their legislative judgment. Rather, "those challenging the legislative judgment must convince the court that the legislative facts on which the classification is

---

9. Even if the "means-focus" test were applicable to this case, I.C. § 72–1414 is sufficient to meet that stricter constitutional muster. The United States Supreme Court, in *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), held in cases where the means-focus test is applicable, that in order not to violate the equal protection clause, statutory classification "must be reasonable, not arbitrary, and must rest on some ground of difference having fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." 404 U.S. at 75–76, 92 S.Ct. at 253–54.

10. *See Dandridge v. Williams*, 397 U.S. 471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970) (holding that a statutory classification in the area of social welfare is consistent with constitutional equal protection if it is rationally based and free from invidious discrimination). *See also Bint v. Creative Forest Products*, 108 Idaho 116, 697 P.2d 818, *appeal dismissed* 474 U.S. 803, 106 S.Ct. 35, 88 L.Ed.2d 28 (1985) (holding that the applicable standard of analysis under both due process and equal protection challenges to a social welfare statute is whether the challenged law bears a rational relationship to a legitimate legislative purpose).

apparently based *could not reasonably be conceived to be true by the governmental decisionmaker.*".... (Emphasis added.)

"'Although parties challenging legislation under the Equal Protection Clause may introduce evidence supporting their claim that it is irrational, [citing cases] they cannot prevail so long as "it is evident from all the considerations presented to [the legislature], and those of which we may take judicial notice, that the question is at least debatable." *Id.,* [U. S. v. Carolene Products Co., 304 U.S. 144] at 154, 58 S.Ct. [778] at 784 [82 L.Ed.` 1234 (1938)]. Where there was evidence before the legislature reasonably supporting the classification, litigants may not procure invalidation of the legislation merely by tendering evidence in court that the legislature was mistaken.' 449 U.S. at 464, 101 S.Ct. at 724." *Johnson v. Sunshine Min. Co., Inc.,* 106 Idaho 866, 870, 684 P.2d 268, 272 (1984). Thus, if the legislature could have believed that by requiring the setoff in I.C. § 72–1414 it was assuring a sound fiscal retirement program, then the statute meets the rational basis test, whether or not in fact a particular statutory setoff accomplished that result. *Minnesota v. Clover Leaf Creamery Co., supra.*

The sole reason for the plurality opinion's finding of no rational basis is its statement that "if we assume for the sake of argument that its purpose could be to strengthen the financial position of the FRF, there should be at least some evidence of FRF insolvency. There is none." The illogic of that statement is immediately apparent. Lack of evidence of FRF insolvency supports the legislature's judgment that the setoff in I.C. § 72–1414, together with the level of contributions, resulted in a solvent system. In any event, it was the claimant's heavy burden to prove the statute to be unconstitutional, not the PERS board's burden to prove it to be constitutional. *Minnesota v. Clover Leaf Creamery Co., supra.* The plurality opinion has reversed that burden. The record in this case establishes that except for the three isolated lump sum settlements which were not required to be set off, the set off has been applied to all retirees by both the FRF and PERS. Even using the plurality's analysis, in the absence of "some evidence of FRF insolvency" it must be presumed that the FRF is solvent and that 72–1414 is accomplishing the legislature's purpose. Understandably the plurality opinion cites absolutely no authority for its "rational basis" analysis and conclusion. There is none.

In any event, the statute does *not* provide for disparate or unequal treatment. The statute treats both classes of firemen (those who receive lump sum settlements of worker's compensation claims and those who receive periodic benefits of worker's compensation claims) equally. Both are required to set off their worker's compensation disability benefits. It is the plurality opinion which, in fact, creates the unequal treatment between lump sum and periodic payment claimants by exempting these lump sum recipients from the statute's express requirement. The very distinction which appellants ask us to draw, and which the plurality adopts, was criticized as unconstitutional in Chief Justice Donaldson's dissenting opinion in *Brock v. City of Boise, supra,* in which he stated:

"In failing to require an offset against retirement benefits for lump sum payments previously received, while requiring such an offset for weekly benefits concurrently received, I.C. § 72–1429P violates the constitutional mandate that 'all persons similarly circumstanced shall be treated alike.' *Reed v. Reed,* 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971). Under this statute, persons who sustain the same injury at the same time, who contribute the same amount to their retirement fund, and who retire at the same time are treated differently depending upon whether they were given a lump sum compensation payment or weekly benefits payable after retirement. This discrimination against weekly benefit recipients is arbitrary and unreasonable, and as such violates the equal protection clause of the fourteenth amendment to the United States Constitu-

tion...." 95 Idaho at 633, 516 P.2d at 192.

Chief Justice Donaldson concluded that "failing to require an offset against benefits for lump sum [worker's compensation] payments previously received" was a denial of equal protection. Ironically, and incomprehensibly, the plurality opinion "find[s] the dissent persuasive." The plurality's acceptance of appellants' argument that I.C. §§ 72–1414 and 72–1429P should be interpreted in the way that the State Insurance Fund allegedly did when it allowed two or three previous claimants to obtain disability benefits without setting off the amounts which they received for lump sum worker's compensation benefits, causes the very constitutional deficiency which Chief Justice Donaldson complained of in his dissent in the *Brock* case.

The purpose of the Firemen's Retirement Fund Act as set forth in I.C. § 72–1401 is to encourage (1) long service as a firefighter and (2) continuing pay for firemen who retire or become disabled. The appellants argue that the setoff requirements of I.C. §§ 72–1414 and 72–1429P do not further these purposes. However, the retirement fund legislation involves the expenditure of public as well as private money, and it is understandable and appropriate that the legislature be concerned about the cost of the program, both to government agencies employing the firemen, as well as the firemen. As this Court held in *Brock*, I.C. §§ 72–1414 and 72–1429P were designed to make the FRF more cost effective by limiting the payment of double income loss benefits to firemen. The plurality's interpretation of I.C. § 72–1414 mandates *the payment of duplicate disability income benefits*. Payment of double benefits does not necessarily encourage long service, and it could have the opposite result. As pointed out in *Brock v. City of Boise, supra:*

> "It is the major purpose of the Workmen's Compensation Law to provide compensation to make good the loss or impairment of earning power which otherwise might fall on the worker or his family, I.C. § 72–1429P does have a fair and substantial relation to the object of

the workmen's compensation and firemen's retirement legislation.

"A leading treatise points out that:

> "'Once it is recognized that workmen's compensation is one unit in an overall system of wage-loss protection, rather than something resembling a recovery in tort or on a private accident policy, the conclusion follows that duplication of benefits from different parts of the system should not ordinarily be allowed.'" 95 Idaho at 632, 516 P.2d at 191 (footnote omitted).

The United States Supreme Court recently held in *Bowen v. Gilliard*, 483 U.S. 587, 107 S.Ct. 3008, 97 L.Ed.2d 485 (1987), that a similar setoff involving welfare benefits which adversely affected some recipients was constitutional and within the realm of the Congress. The Court went on to point out that:

> "The district court was undoubtedly correct in its perception that a number of needy families have suffered, and will suffer, as a result of the implementation of the DEFRA amendments to the AFDC program. Such suffering is frequently the tragic by-product of a decision to reduce or to modify benefits to a class of needy recipients. *Under our structure of government, however, it is the function of Congress—not the courts—to determine whether the savings realized, and presumably used for other critical governmental functions, are significant enough to justify the costs to the individuals affected by such reductions.* The Fifth amendment 'gives the federal courts no power to impose upon [Congress] their views of what constitutes wise economic or social policy,' by telling it how 'to reconcile the demands of ... needy citizens with the finite resources available to meet those demands.' *Dandridge v. Williams*, 397 U.S. 471, 486, 472, 90 S.Ct. 1153, 1162, 1155, 25 L.Ed.2d 491 (1970)." 107 S.Ct. at 3014–3015 (emphasis added).

Similarly, in the instant case the legislature has made a budgetary and economic policy determination regarding the level of firemen's retirement disability benefits. This

Court has " 'no power to impose upon [the legislature its] views of what constitutes wise economic or social policy' by telling it how 'to reconcile the demands of ... needy citizens with the finite resources available to meet those demands.' " *Bowen v. Gilliard,* 107 S.Ct. at 3015.

In sum, contrary to the appellants' assertion, there is no violation of the equal protection clause of either the United States or Idaho Constitutions, whether measured by the rational basis test or the means-focus test. Ironically, the plurality opinion's construction of the statute, granting benefits to these lump sum claimants, violates the equal protection clause. *Brock v. City of Boise, supra* (Donaldson, C.J., dissenting).

### B.

Next, the appellants argue that I.C. § 59–1356 acts as a "grandfather clause" to protect the retirement benefits of all firemen who were in the FRF prior to its inclusion in PERS. Section 59–1356 states:

"**59–1356. Benefits payable.**—The combined rights and benefits of paid firemen who were employed prior to October 1, 1980, shall not be less than the rights and benefits they would have received from the firemen's retirement fund, had the fund not been integrated with the employee system."

Thus, according to appellants, the legislature intended that the PERS board and the commission interpret I.C. §§ 72–1414 and 72–1429P the same as the prior decisions of the State Insurance Fund. The appellants have pointed to three firemen [11] who retired before 1980 under similar circumstances and received benefits without an offset, and argue that these adjudications by the State Insurance Fund have created a policy or interpretation of the statute which binds the PERS board and requires a holding in conformance with these past cases.[12] There is no merit in this argument.

As previously pointed out, the statute is not ambiguous and, although the record is unclear as to what motivated the State Insurance Fund to not apply the setoff in the cases of the three lump sum settlements, it is clear that the State Insurance Fund acted contrary to the clear wording of the statute when it failed to apply the setoff in the adjudications cited by the appellants.

Additionally, "the doctrine of *stare decisis* generally is not ... applicable to administrative decisions...." Annot., *Applicability of Stare Decisis Doctrine to Decisions of Administrative Agencies,* 79 A.L.R.2d 1126, 1132 (1961). An "administrative agency is ordinarily not bound to follow a determination made upon the same question by another administrative agency." 79 A.L.R.2d at 1129. *See NLRB v. Pacific Intermountain Express Co.,* 228 F.2d 170 (8th Cir.1955), *cert. denied,* 351 U.S. 952, 76 S.Ct. 850, 100 L.Ed. 1476 (1956). *See* 2 Am.Jur.2d *Administrative Law* § 481 (1962) (an administrative determination binds only those who are parties to the

---

11. The appellants' brief discusses each of these adjudications which took place before the State Insurance Fund prior to 1980. The record, however, is unclear as to why the State Insurance Fund overlooked I.C. §§ 72–1414 and 72–1429P. It is not clear whether the parties or the Fund were even aware of the statute at the time of those adjudications. It is not unheard of for litigants, and indeed even a court, to completely overlook a statute that would have been the governing law of the case. In *White v. Marty,* 97 Idaho 85, 540 P.2d 270 (1975), this Court and the parties missed a controlling statute, I.C. § 1–2214. Shortly thereafter, this Court recognized the error and promulgated I.R.C.P. 82(c)(3) to correct the oversight. When the issue finally came before the Court again in *Carr v. Magistrate Court of the First Judicial District,* 108 Idaho 546, 700 P.2d 949 (1985), this Court overruled *White v. Marty.* In the instant case the record before the commission did not contain the rationale behind the State Insurance Fund's decisions in these cases, nor did it contain any evidence that the State Insurance Fund made an administrative interpretation of I.C. § 72–1414 or was even aware that the setoff requirement in the statute existed.

12. The only evidence within the record that the State Insurance Fund had a policy with regard to the setoff statute and lump sum settlement agreements was a legal opinion issued by a Boise attorney which identified the three prior cases. A letter opinion certainly cannot be held to bind an administrative agency, let alone the Idaho Supreme Court to an incorrect legal position.

proceeding over whom the agency had jurisdiction and an administrative order which adjudicates the rights of individuals is binding only on the parties to that particular proceeding and not upon other people who find themselves in an identical situation). Therefore, the fact that the State Insurance Fund approved three lump sum settlements, without requiring the offsets, would not bind the PERS board.

Finally, the plurality, in effect, legitimizes the State Insurance Fund's earlier informal and erroneous interpretation of I.C. § 72–1414. The plurality opinion's acceptance of this position ignores what this Court recently said in *Idaho Fair Share v. Idaho Public Util. Comm'n*, 113 Idaho 959, 751 P.2d 107 (1988), "[T]wo unanimous decisions of this Court ... establish the position that whether an administrative construction is correct is ultimately a question for judicial decision." The plurality opinion raises state agency misinterpretation of the law above the decisions of this Court and works to destroy any rational consistency which might be built into the law. The error in the plurality opinion's reasoning was recognized and rejected by the Missouri Court of Appeals, which has stated:

> "[T]he substantive law which the agency was set up to administer, and which it must necessarily construe in making its judicial determinations, would stand amended by every mistaken interpretation that might be put upon it, its scope distorted and its purpose subverted by a succession of errors which not even the agency itself would afterwards be allowed to correct. *If a policy has been erroneously adopted, the ends of justice will hardly be served by compounding the offense and perpetuating the error.*" *Mitchell v. City of Springfield*, 410 S.W.2d 585, 589 (Mo.Ct.App.1966) (emphasis added).

The State Insurance Fund's actions can only be considered as individual compromised determinations without *stare decisis* effect. Those settlements were contrary to the mandate of I.C. §§ 72–1414 and 72–1429P that a setoff for worker's compensation benefits be applied to disability retirement benefits received under the FRF, and they cannot be considered controlling precedent in this case. *Idaho Fair Share v. Idaho Public Util. Comm'n, supra; Ware v. State Tax Comm'n*, 98 Idaho 477, 567 P.2d 423 (1977).

C.

Finally, the plurality opinion's acceptance of appellants' argument that I.C. § 72–1414 impairs the "obligation of contract" and is a violation of Art. 1, § 10, of the United States Constitution, and Art. 1, § 16, of the Idaho Constitution is without either a factual or a legal basis. Legislation will unconstitutionally impair an obligation of contract only when the contract was in existence at a time prior to when that legislation was enacted. *See Munday v. Wisconsin Trust Co.*, 252 U.S. 499, 40 S.Ct. 365, 64 L.Ed. 684 (1920). *Cf. Fidelity State Bank v. North Fork Highway Dist.*, 35 Idaho 797, 209 P. 449 (1922). The Firemen's Retirement Fund Act, including the setoff requirement, was enacted in 1945. The appellants' contracts with the FRF began in 1947 and in 1975 when they became employees of the Boise Fire Department. Thus, when the appellants accepted employment with the city, they contractually accepted the setoff terms specified in the FRF package of benefits. The impairment of that obligation of contract argument has no merit because the setoff provision was part of the original contract. *Nash v. City of Boise Fire Dept.*, 104 Idaho 803, 663 P.2d 1105 (1983); *Munday v. Wisconsin Trust Co., supra.* In sum, both appellants' contractual relationship with the FRF contained the setoff clause of I.C. § 72–1414, and thus the impairment of contract argument is meritless.

The plurality opinion benefits two retired firemen at the expense of all other firemen in the retirement system. The plurality opinion itself denies equal protection to the other firemen who are receiving periodic worker's compensation benefits, and whose benefits are subject to the setoff in I.C. § 72–1414.

The commission applied the correct legal standard to the undisputed factual record

in this case and the commission's decision should be affirmed.